George and Martin **KESSELHAUT**

v.

The **UNITED STATES.**

No. 166–74.

United States Court of Claims.

May 18, 1977.

---

Victor A. Altman, Washington, D. C., attorney of record for plaintiff. J. H. Krug and Krooth & Altman, Washington, D. C., of counsel.

Marc J. Fink, Washington, D. C., with whom was Asst. Atty. Gen. Barbara A. Babcock, Washington, D. C., for defendant.

Before COWEN, Senior Judge, DAVIS, Judge, SKELTON, Senior Judge, NICHOLS, KASHIWA, KUNZIG and BENNETT, Judges, en banc.

## ON PLAINTIFFS' REQUEST FOR REVIEW

PER CURIAM:

This case is before the court on plaintiffs' request for review of an order by Trial Judge Schwartz, stating that counsel for plaintiffs in the above action, the firm of Krooth and Altman, their partners and associates, are disqualified to represent plaintiffs in connection with the claims grounded upon a contract implied in fact, or express, and therefore directing them promptly to withdraw as counsel. The court heard the case *en banc,* and on October 22, 1976, entered an order remanding the case to Trial Judge Roald Hogenson, Chief of the Trial Division for further fact finding. Trial Judge Schwartz had himself suggested that further proceedings be before another trial judge. Trial Judge Hogenson has made his report and the parties have elected to stand on their previous briefs and oral arguments.

The facts are as follows: A. M. Prothro, Esquire, had been for many years a lawyer employed in the Federal Housing Administration (FHA) and, since its creation, in the Department of Housing and Urban Development (HUD), rising to be General Counsel of FHA. During the later years of this period the Kesselhaut firm, New Jersey lawyers, represented FHA before New Jersey tribunals with respect to local taxes on property that FHA had acquired by foreclosure. In 1970 they were successful in obtaining tax abatements in the amount of $2,400,000 approximately, but a controversy developed between them and FHA as to the amount of the fees. They filed the above-entitled action in this court to recover the fees, on May 7, 1974.

Mr. Prothro meanwhile retired in March 1969. Up to that date he had had sporadic personal contacts with the matter Kesselhaut and Kesselhaut was handling for FHA, had conferred with George Kesselhaut about it by telephone on one occasion, and had also conferred with him once about another matter. Most of the liaison between the FHA and the Kesselhaut firm, concerning the New Jersey tax case, was conducted by other FHA lawyers who were subordinate to Mr. Prothro. After his retirement he had no further contact with the FHA side of the case.

Mr. Prothro became connected with Krooth and Altman after his retirement. They are a Washington firm and Mr. Kesselhaut had heard of them as outstanding specialists in FHA and HUD related matters. He had learned that Mr. Prothro had become associated with them, and Mr. Prothro was the only attorney associated with them whom he knew. He phoned Mr. Prothro at Krooth and Altman on July 11, 1972, from his Newark, New Jersey, office, and asked for an appointment, not stating the purpose. The meeting took place at Krooth and Altman's offices on July 14. Mr. Kesselhaut stated he wished to retain the firm to prosecute his FHA claim. Mr. Prothro promptly said he could not personally participate. They both met with two other attorneys with the firm, but could not then decide whether Mr. Prothro's disqualification would disqualify the firm. Ultimately Mr. Prothro, after research, decided they were not disqualified. He was next called into a meeting (date not found) in the Krooth and Altman conference room attended by Mr. Kesselhaut, with Mr. Pickrel and Mr. Zwerner of the firm. Mr. Pickrel, not Mr. Prothro, had arranged this meeting. Mr. Prothro said he did not think the firm was disqualified, but he did not further participate in the discussion of that question. The firm eventually decided to take the case after having shown Mr. Prothro certain documents in the case and

tested his recollection of them, which was lacking.

Mr. Prothro has never communicated with plaintiffs concerning the merits of their claim, nor provided them with information, advice, or guidance thereon. Similarly, he has never given advice, information, or guidance to the attorneys in Krooth and Altman, nor has he looked at documents in their files concerning the merits of the claim.

Despite Mr. Prothro being ostensibly a partner, actually Krooth and Altman paid him a straight salary with no participation in firm earnings. Shortly before trial, this was changed to hourly compensation for part-time work. At the time of the trial before Judge Hogenson he expected to retire entirely from Krooth and Altman by December 31, 1976.

On November 10, 1976, i. e., after the oral argument before the court en banc, a senior partner of Krooth and Altman issued to the firm's attorneys a memo reciting the foregoing facts, referring to Formal Opinion 342 of the Committee on Professional Ethics of the American Bar Association, and providing that: Mr. Prothro is to continue to have no connection with the case, all other attorneys are not to discuss it with him and are to prevent any case documents from reaching him, the files are to be kept in a locked file cabinet, the keys controlled by Messrs. Altman and Krug and issued to other attorneys, clerks, and secretaries, only on a "need to know" basis.

 The court is of the opinion that on consideration of the known facts to date, and the above-described screening procedure, the exclusion of Krooth and Altman from the case is not now justified, and the trial judge's order so providing must be vacated. The disqualification of Mr. Prothro personally is unchallenged and of course will stand. Further screening measures with respect to the fees to be derived from the case are not needed since Mr. Prothro has never been and is not now in a position to receive any share of them. There was previously some attempt to show that Mr. Prothro was not personally disqualified, but

we assume such attempt is now abandoned in view of the screening set-up as described above.

We share the view expressed in the above-mentioned Formal Opinion 342 that an inexorable disqualification of an entire firm for the disqualification of a single member or associate, is entirely too harsh and should be mitigated by appropriate screening such as we now have here, when truly unethical conduct has not taken place and the matter is merely one of the superficial appearance of evil, which a knowledge of the facts will dissipate. We note that the thousands of attorneys employed in Government do not, for the most part, have Civil Service protection, and are subject to removal without cause at any time. Personal disqualifications may be few in the cases of "journeyman" attorneys, but will be extensive in the case of one holding high supervisory responsibility, like Mr. Prothro. Should an attorney, having left Government perhaps contrary to his own volition, ineluctably infect all the members of any firm he joined with all his own personal disqualifications, he would take on the status of a Typhoid Mary, and be reduced to sole practice under the most unfavorable conditions. There will be instances where no screening procedure will be adequate, and the infection must be allowed to take its course. When screening is used it must, as here, be specific and inflexible. Each case depends on its own merits.

The iron rule urged by the trial judge would act as a strong deterrent to the acceptance of Government employment by the most promising class of young lawyers. Indeed, in fairness to them, it would be necessary to warn them before signing on, of the disabilities likely to be incurred at a later date. Attorneys having both private and Government experience are often better qualified to be of value to courts, as their officers, and to their clients, public and private, than those having one or the other experience alone. If interchange between the private and public sectors of the bar is to be halted, and careers in such sectors made matters of separate tracks

that will never converge, it should be only upon full consideration of all the legal incidents of Government employment of lawyers, and it should be done overtly, and not achieved as a collateral consequence of a disciplinary rule ostensibly having other purposes.

Furthermore, if the conduct reported here is to be deemed reprehensible and punished by disciplinary action or disqualification, without hope of mitigation by screening, this should be done prospectively and not by attaching harsh consequences to acts that were innocent when performed, so far as any specific pronouncement by the organized bar was then concerned.

We consider further that it is the non-delegable responsibility of the court to obtain the adherence of its bar to proper ethical standards in the management of cases before it. Accordingly, the consent of the adverse party would not necessarily compel our assent to a flagrant conflict of interest, nor, on the contrary, should the withholding of consent by the Government, as here, be binding on us if, as here, it appears now to be unjustified, whether or not it may have been justified initially. Parties can be heard on apparent conflicts of interests on the part of adversary counsel, but they cannot be allowed to debase the matter into another phase of adversary tactics.

The parties have called to our attention various pronouncements by the organized bar, which has given focused and serious consideration to the inexorable extension of disqualification from an individual to an entire firm only at a quite recent date, more recent, in fact, than the first contacts of Mr. Kesselhaut with Mr. Prothro at the Krooth and Altman firm. We have considered these pronouncements. Trial Judge Schwartz also has called our attention to another, which appeared after the oral argument in this case, Opinion No. 889, Committee on Professional and Judicial Ethics, Bar Association of the City of New York, November 19, 1976. It is published in the Association's RECORD, Vol. 31, pp. 552, 565. It summarizes prior Bar discussions.

We find that it completely supports our disposition of the case. Discussion from outside Washington is particularly welcome. We assume Government and ex-Government attorneys do not preponderate in the New York bar, though doubtless represented there; and some assurance can be felt that Opinion No. 889 is not slanted either way by any sort of self-interest.

Accordingly, upon consideration of the record and the briefs and oral argument of counsel, it is ordered that the Order of Trial Judge Schwartz, filed March 29, 1976, is vacated, and the cause is remanded to the Trial Division for further proceedings consistent with this opinion.