405 A.2d 1232

COMMONWEALTH of Pennsylvania

v.

EASTERN DAWN MOBILE HOME PARK, INC., Weisser Mobile Homes, Inc., William W. Weisser, Edward O. Weisser, Violet Weisser and Geraldine M. Weisser, Appellants.

Supreme Court of Pennsylvania.

Argued April 26, 1979.

Decided July 5, 1979.

Rearguments Denied Oct. 1 and Dec. 3, 1979.

Donald B. McCoy, Newtown, Bucks County, for appellants.

B. Christopher Lee, John E. Kelly, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

PER CURIAM.

The Court being equally divided, the order is affirmed. Each party to pay own costs.

O'BRIEN, J., files an Opinion in Support of Affirmance which EAGEN, C. J., and LARSEN, J., join.

ROBERTS, J., files an Opinion in Support of Reversal in which NIX and MANDERINO, JJ., join.

## OPINION IN SUPPORT OF AFFIRMANCE

O'BRIEN, Justice.

This appeal is from an order of Commonwealth Court, holding counsel for appellants, Eastern Dawn Mobile Home Park, Inc., Weisser Mobile Homes, Inc., William W. Weisser, Edward O. Weisser, Violet Weisser and Geraldine M. Weisser, be disqualified from providing representation because of violations of various canons of the Code of Professional Responsibility.

In early 1977, shortly after enactment of the Mobile Home Park Rights Act,[1] several complaints against the owners and operators of Eastern Dawn Mobile Home Park were filed with the Bucks County District Attorney's Office. The Bucks County District Attorney assigned deputy district attorney John B. Lampi and a county detective to investigate the complaints. Throughout the investigation Eastern Dawn Mobile Home Park was represented by Donald B. McCoy, Esquire. Following the investigation, Attorney Lampi effected a compromise with Eastern Dawn and through the district attorney's office, issued a formal report concluding that Eastern Dawn's practices did not violate the Mobile Home Park Rights Act.

Approximately one year after investigating Eastern Dawn, Lampi resigned from the district attorney's office and took a job with Donald B. McCoy and Associates. During this one year period, numerous complaints against Eastern Dawn similar to those previously lodged with the Bucks County officials were filed with the State Bureau of Consumer Protection. Pursuant to those complaints, the Bureau investigated the practices of the owners and operators of Eastern Dawn and of Weisser Mobile Homes, Inc. As a result of that investigation, the Bureau filed a complaint alleging all appellants were engaging in practices which prevented residents of Eastern Dawn from selling their mobile homes.

1. Act of November 24, 1976, P.L. 1176, No. 261, § 1, 68 P.S. § 398.1 (Supp.1978–79).

Shortly after appellants were served with notice of the instant lawsuit, Deputy Attorney General John Kelly was contacted by Lampi, who stated that he would be representing appellants and that he wished to discuss the matter. Kelly immediately informed Lampi that because of his prior involvement with the matter as a prosecutor, the Commonwealth would file a motion to disqualify Lampi or any members of his firm from representing appellants. McCoy then went to the phone and informed Kelly that he alone would represent appellants. Kelly stated that nonetheless the Commonwealth would file its motion to disqualify.

On January 23, 1979, the Commonwealth filed its motion to disqualify McCoy or any member of his firm from representing appellants in this suit. Following oral argument before Judge Wilkinson of the Commonwealth Court, an order was entered disqualifying McCoy and his associates from representing appellants. Believing the question to be a controlling question of law as to which there is substantial ground for differences of opinion, Judge Wilkinson certified the case for immediate appellate review. This court granted appellants' permission to immediately appeal from the order of Commonwealth Court.

In *Slater v. Rimar, Inc.*, 462 Pa. 138, 338 A.2d 584 (1975), we held that the Code of Professional Responsibility has the effect and force of statutory rules of conduct for lawyers. Canon 9 provides: "A lawyer should avoid even the appearance of impropriety." Disciplinary Rule 9–101(B) provides:

"A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."

Further, two of the ethical considerations under Canon 9 provide:

"EC 9–1. Continuation of the American concept that we are to be governed by rules of law requires that the people have faith that justice can be obtained through our legal system. A lawyer should promote public confidence in our system and in the legal profession.

\* \* \* \* \* \*

"EC 9–3. After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists."

I believe the above-quoted portions of the Code of Professional Responsibility require the disqualification of McCoy from representing appellants in this matter.

In *Am. Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 184, 389 A.2d 568, 572 (1978), we stated:

"We also note our agreement with the conclusion of the Third Circuit Court of Appeals in *Kramer v. Scientific Control Corp.*, 534 F.2d 1085 (3d Cir. 1976), that when one attorney is prohibited by ethical considerations from undertaking to represent a certain client, all members of the firm to which that attorney belongs are also prohibited from serving as counsel to that client. . . ."

I thus believe that if Lampi is prohibited from representing appellants, McCoy must fall under the same prohibition.

I believe DR 9–101(B) clearly would prohibit Lampi from representing appellants in the instant case. While a public prosecutor, Lampi was responsible for investigating complaints against Eastern Dawn. Further, Lampi effectuated a compromise with Eastern Dawn whereby Eastern Dawn agreed to certain practices which would allegedly make it easier for residents of the trailer park to sell their mobile homes. After effectuating the compromise, Lampi issued a formal report finding that Eastern Dawn did not violate the Mobile Home Park Rights Act. Thus, by now attempting to represent appellants in a matter almost identical to that which he investigated while a public employee, Lampi would be accepting private employment on a matter in which he had substantial responsibility as a public employee, thereby violating the mandate of DR 9–101(B).

In their brief, appellants state:

"Mr. Lampi has never accepted this private employment since [appellants] have always been represented by Mr. McCoy individually. . . .

"To allow this motion is to deprive [appellants] of their choice of counsel, an attorney with whom they have developed a working relationship over the last ten years. This deprivation cannot be justified simply on the basis of an *essentially fortuitous change of employment* by a third party. (Emphasis added.)

Appellants, however, misperceive the thrust of Canon 9.

As Chief Judge Kaufman stated in *General Motors Corporation v. City of New York*, 501 F.2d 639, 649 (2d Cir. 1974):

"Nor can we overlook that the Code of Professional Responsibility is not designed for Holmes' proverbial 'bad man' who wants to know just how many corners he may cut, how close to the line he may play, without running into trouble with the law. Holmes, The Path of the Law, in Collected Legal Papers 170 (1920). Rather, it is drawn for the 'good man,' as a beacon to assist him in navigating an ethical course through the sometimes murky waters of professional conduct. Accordingly, without in the least even intimating that [the attorney in question] himself was improperly influenced while in Government service, or that he is guilty of any actual impropriety in agreeing to represent the City here, we must act with scrupulous care to avoid any *appearance* of impropriety lest it taint both the public and private segments of the legal profession." (Emphasis in original.)

In the instant case, I would affirm the order disqualifying McCoy since the complaining parties, at least, would tend to view Lampi's change of employment as *not* a mere fortuitous event.

Appellants argue that disqualification in the instant case would overly restrict the movement of public employees into the private sector. In disallowing a motion to disqualify a former government attorney, the court in *United States v.*

*Standard Oil Company,* 136 F.Supp. 345, 363 (S.D.N.Y.1955) stated:

> ". . . If service with the government will tend to sterilize an attorney in too large an area of law for too long a time, or will prevent him from engaging in practice of the very specialty for which the government sought his service—and if that sterilization will spread to the firm with which he becomes associated—the sacrifices of entering government service will be too great for most men to make. As for those men willing to make these sacrifices, not only will they and their firms suffer a restricted practice thereafter, but clients will find it difficult to obtain counsel . . . ."

However, the attorney in that case:

> ". . . never investigated or passed upon the subject matter of the pending case . . . never rendered or had any specific duty to render any legal advice in relation to the regulations involved in the litigation." Kaufman, the former government attorney and the Canons of Professional Ethics, 70 Harv.L.Rev. 657, 664 (1957).

In the instant case, Lampi's involvement is much more substantial, thus rendering *United States v. Standard Oil* inapposite.

Appellants further allege that if disqualification is necessary, it should not apply to appellant Weisser Mobile Homes, Inc.,[2] which was never a party to the first investigation. However, as Judge Wilkinson stated: "These people are all the same names, they are all the same family, they are all intertwined." I can find no reason to disturb this finding or the order disqualifying McCoy from representing any of the appellants in this litigation.

I feel it is necessary to point out that we find no actual improper conduct on the part of either McCoy or Lampi. At a time when public confidence in the legal profession is

**2.** The Commonwealth in its complaint has alleged that Eastern Dawn has prevented residents from selling their mobile homes to promote the sale of new mobile homes by Weisser.

seriously eroded, however, McCoy must be disqualified because of the *appearance* of impropriety.

I would thus affirm the decree of Commonwealth Court.

EAGEN, C. J., and LARSEN, J., join in this opinion.

## OPINION IN SUPPORT OF REVERSAL

ROBERTS, Justice.

In what the Commonwealth's Bureau of Consumer Protection expressly characterizes as a "test case," the majority approves the Bureau's motion to disqualify Donald McCoy, Esquire, from representing appellants, regular clients of McCoy for the past ten years, wholly on a perceived "appearance of impropriety." I must dissent.

A reading of the record in the light most favorable to the Bureau's version of the facts, with the most sensitive and revealing microscope, and an application of the very highest professional ethical standards, reveals not the slightest trace, taint, or even suggestion of a possible appearance of improper conduct. In its "test case" against McCoy, the Bureau claims, and the opinion in support of affirmance agrees, that McCoy must be disqualified solely because McCoy hired John Lampi, Esquire, some time before the Bureau began to investigate complaints that appellants were not complying with mobile home park laws. But Lampi in no respect was acquainted with the present charges against appellants. Rather, Lampi, a former deputy district attorney of Bucks County, "investigated" past complaints, filed over a year before the present claims, against only one of the appellants, Eastern Dawn. Indeed, Lampi "investigated" by following the directions of his supervisor, an assistant district attorney, who was still further responsible to the District Attorney himself. And in any event Lampi carefully has avoided any involvement in the present representation of appellants on the present charges.

Surely on a record as unsubstantiated as this one, the majority has not decided a "test case" preserving the integ-

rity of our adversarial process at all. Instead, by permitting the Bureau to force appellants to abandon time-tested and trusted counsel on the basis of pure speculation that Lampi's past, limited experience in local government might somehow bear on the present, unrelated state investigation, the opinion in support of affirmance affronts our adversarial system of dispute resolution. To disqualify counsel on this record is to allow nothing more than government, or any other litigant, to pick counsel for opponents in litigation. I would not condone such an unfortunate setback to our adversarial process. The opinion in support of affirmance's perception of an appearance of impropriety on this insubstantial record is a misguided overreaction and unsupported assumption which must be rejected. I would reverse the order of the Commonwealth Court.

NIX, J., joins in this opinion.

MANDERINO, J., joins in this opinion.