Lloyd A. KADISH and Peter Berman, Plaintiffs,

v.

COMMODITY FUTURES TRADING COMMISSION, Defendant.

No. 82 C 3331.*

United States District Court,
N.D. Illinois, E.D.

Dec. 7, 1982.

See also, 548 F.Supp. 1030.

Royal B. Martin, Jr., Shelly B. Kulwin for Silets & Martin, Ltd., Chicago, Ill., for plaintiffs.

Adrianne S. Harvitt, Constantine Gekas, Chicago, Ill., Kenneth Raisler, Helen Blechman, Washington, D.C., for Commodity Futures Trading Com'n.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Lloyd Kadish ("Kadish") and Peter Berman ("Berman") sue Commodity Futures Trading Commission ("CFTC") for a declaratory judgment authorizing the law firm of Silets & Martin, Ltd. ("Silets & Martin") to represent Kadish and Berman in a separate subpoena enforcement action (No. 82 C 3387) brought by CFTC against them. For the reasons and upon the conditions stated in this memorandum opinion and order, judgment is granted authorizing such representation.

This Court has issued three memorandum opinions and orders in this action:

1. Opinion I (548 F.Supp. 1030 (Sept. 23, 1982)) denied CFTC's summary judgment motion, holding the Silets & Martin firm was not disqualified as a matter of law.

2. Opinion II (548 F.Supp. 1036 (Oct. 13, 1982)) was issued sua sponte because of the intervening opinion by our Court of Appeals in *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715 (7th Cir. Sept. 27, 1982), addressing the issue of vicarious law firm disqualification.

3. Opinion III (slip opinion, Nov. 15, 1982) dealt with the hearing procedure to be followed on the ultimate merits, at the same time again explicating the related substantive analysis.

---

* This action and the separate CFTC subpoena enforcement action brought by CFTC and referred to in the first paragraph of the text are both before this Court. Opinions I and II referred to in the text were erroneously given only the 82 C 3387 number but should be con-

sidered as having been entered in this action as well. Because this is a final order granting the relief sought in 82 C 3331, while the other action remains pending, this order is entered only in 82 C 3331.

After some intermediate procedural skirmishes (dealt with in part by Opinion III) this Court scheduled a December 3 evidentiary hearing to permit a decision on the ultimate merits. However the parties filed a November 29 stipulation agreeing to waive the evidentiary hearing and asking this Court to rule instead on the basis of the evidence (affidavits and supporting documents) presented earlier on CFTC's summary judgment motion. Opinion III at 4 has already expressed the Court's willingness so to rule on a stipulated record.

In accordance with Fed.R.Civ.P. ("Rule") 52(a), this Court finds the following facts and states the following conclusions of law:

*Findings of Fact ("Findings")* [1]

1. On Sunday, October 26, 1980 John Dolkart ("Dolkart"), a senior trial attorney with CFTC, was working in its Chicago offices, preparing for a business trip the following day. CFTC Regional Counsel Constantine Gekas ("Gekas") came in and asked Dolkart to join him in his office to discuss something over the telephone with other CFTC personnel in Washington. Dolkart did so. Gekas explained Chicago Discount Commodity Brokers ("CDCB") was in financial difficulty and that he and the other CFTC people had been talking about the situation for a considerable amount of time before Dolkart was brought in to join the telephone conversation. Gekas introduced Dolkart, via speaker phone, to John Cotton and an unidentified staff attorney at CFTC's Washington, D.C. Division of Enforcement.

2. During the ensuing four-sided conversation Gekas asked what Dolkart knew about Kadish. Dolkart responded Kadish was "sharp" and CFTC would need to proceed cautiously with Kadish representing CDCB. All four then engaged in a discussion in principle as to the advisability of moving against CDCB by federal court injunctive action rather than through administrative proceedings. Dolkart opined that from the public's perception neither posed any particular advantage when a registrant like CDCB becomes insolvent. Then Dol-

kart excused himself from the discussion. Dolkart had spent only a few minutes in the telephone conversation, spending not over ten minutes in Gekas' office overall. At no time during the conversation while Dolkart was on the line did the participants discuss CDCB's factual situation. Dolkart was not told anything of the nature of the extended discussion that had taken place before Gekas called him into the telephone conversation.

3. Later the same day Gekas again visited Dolkart's office, this time to ask that Dolkart prepare an injunctive complaint for use by CFTC against CDCB. Dolkart prepared a "boilerplate" complaint by "cutting and pasting" portions of pleadings in prior CFTC cases. Although his draft Complaint contained no factual information as to CDCB, Dolkart told Gekas the relevant facts could be gleaned from public filings in CFTC's office and then aided Gekas in obtaining those files (though Dolkart did not review them before giving them to Gekas).

4. CFTC subsequently issued an order of investigation in the CDCB matter. That order included Dolkart's name as one of the three regional CFTC employees empowered to issue subpoenas and take testimony in the CDCB investigation. However, Dolkart (who was unaware of that designation) had no further involvement in the CDCB investigation. Nor was Dolkart kept abreast of substantive matters in the CDCB injunctive action and ensuing investigation. Occasionally CFTC lawyers made general remarks to Dolkart as to the status of the proceedings, but the only information imparted in those remarks was publicly available in any event.

5. In April 1981 Dolkart was asked to and did provide minimal assistance to CFTC staff attorney Adrianne Harvitt ("Harvitt") in CFTC's subpoena enforcement action against CDCB's accountant David B. Dahl. Dolkart's "involvement" consisted of two items:

   (a) Dolkart briefly discussed with Harvitt the federally recognized accountant-

---

1. See Appendix.

client privilege in general, not in relation to specific facts regarding Dahl and CDCB.

(b) Dolkart accompanied Harvitt to court for her April 29, 1981 argument of a motion in the CDCB matter. Dolkart did not participate in Harvitt's preparation or argument. Instead he was with Harvitt solely to "hold her hand," because she was both new to the Division of Enforcement and generally inexperienced.

6. On June 12, 1981 Dolkart left CFTC to join Silets & Martin as an associate three days later. In December 1981 Kadish and Berman, who had received CFTC administrative subpoena duces tecum in its CDCB investigation, retained that law firm to represent them.

7. As a matter of law firm policy, Silets & Martin (all of whose lawyers are former government attorneys) screens each case coming into the office to determine whether and the extent to which any firm attorney had been involved in the case while in the government's employ. If any attorney had been substantially involved in a case, the firm would refuse to handle it. If an attorney had been only tangentially involved, the firm would accept the case but insulate that attorney from further exposure to the matter.

8. Silets & Martin adhered to the policy stated in Finding 7 in the CDCB matter. Before meeting with Kadish and Berman, Royal Martin, Jr. ("Martin") asked Dolkart to work on the matter. Dolkart described his earlier "peripheral exposure" to Martin. Martin then decided Silets & Martin *could* represent Kadish and Berman but "pursuant to our general firm policy, Dolkart should not be involved in the matter." Martin invited another associate, Shelly Kulwin ("Kulwin"), into his office (with Dolkart still present) and said (a) Martin and Kulwin would work on the Kadish and

Berman matter and (b) Dolkart "was to be completely excluded from participation in the case."

9. In accordance with the firm's exclusion policy and the principle established by Martin as described in Finding 8, Dolkart has not been even peripherally involved in the CDCB matter, but has been completely excluded from all participation. Dolkart has had no interaction whatever with Silets & Martin's partners, or with its associates involved in the Kadish and Berman matter, relating to that matter.

10. Dolkart, as an associate, does not share in fees the firm receives from representing Kadish and Berman.

### Conclusions of Law ("Conclusions")

1. This Court has jurisdiction over this declaratory action under 28 U.S.C. §§ 1331 and 1337 and 5 U.S.C. § 702.

2. As this Court held in Opinion I (548 F.Supp. at 1032–34), Code of Professional Responsibility ("Code") Disciplinary Rule ("DR") 9–101(B) bars Dolkart from representing Kadish and Berman. Such disqualification does not stem from Dolkart's having been the repository of CFTC "confidences and secrets" (as the Findings and Conclusion 4 make plain, he was not), but rather because his *status* was such as to have vested "substantial responsibility" (as distinct from actual knowledge) in him (548 F.Supp. at 1033).

3. Dolkart's personal disqualification does not extend vicariously to Silets & Martin unless:

(a) Dolkart was the recipient of CFTC "confidences and secrets" within the meaning of Canon 4 and its DR 4–101[2] *and*

(b) Dolkart communicated such potentially disqualifying information to Silets & Martin.[3]

**2.** DR 4–101 defines "confidences" and "secrets":

"Confidence" refers to information protected by the attorney-client privilege under applicable law, and "secret" refers to other information gained in the professional relationship

that the client has requested be held inviolate or the disclosure of which would be embarrassing to or would be likely to be detrimental to the client.

**3.** Opinion II dealt with the possibility that *Freeman* would require the firm's disqualification

As Opinion II (548 F.Supp. at 1036) recognizes, there is a rebuttable presumption that both propositions are true. Furthermore, in the absence of dispositive evidence of actual communication, the second proposition can be disproved upon a showing that Silets & Martin adopted effective and timely screening procedures to safeguard against contaminating disclosure. *See* Opinion I (548 F.Supp. at 1034–35).

4. While employed at CFTC Dolkart clearly did not receive any confidences or secrets that might warrant Silets & Martin's disqualification. As confirmed by the clear and convincing weight of the evidence, Dolkart was never privy to factual information concerning CDCB or to CFTC's strategies in prosecuting the injunction suit against CDCB. Indeed the only arguably confidential information ever imparted to Dolkart was the initial disclosure that CFTC planned to bring an injunctive action (and to investigate CDCB's affairs). And once those proceedings were in fact instituted (as occurred long before Dolkart left CFTC and joined Silets & Martin), by definition such limited knowledge ceased to be capable of being labeled a confidence or secret. Accordingly, Silets & Martin's evidentiary showing has successfully (and conclusively) rebutted the first presumption referred to in Conclusion 3.

5. Even if, contrary to the clear and convincing weight of the evidence, Dolkart were somehow viewed as tainted with CFTC confidences and secrets, Silets & Martin has not been similarly infected. It is uncontradicted (see Findings 7–9) the law firm took effective steps at the very outset to insulate its other members from any potentially disqualifying information acquired by Dolkart. Accordingly, the second presumption in the vicarious disqualification inquiry is also rebutted.

\* \* \*

For the reasons stated in the Findings and Conclusions, this Court finds, concludes and declares the Silets & Martin firm is entitled to represent Kadish and Berman in the separate subpoena enforcement action brought by CFTC against Kadish and Berman (82 C 3387). Because the other relief sought in the Complaint (a declaratory judgment as to the Kadish-Berman attorney-client privilege vis-a-vis CDCB) may more appropriately be dealt with directly in the context of the subpoena enforcement action, the prayer for such relief is simply dismissed without prejudice.[4] Accordingly this memorandum opinion and order is a final order in this action.

*Appendix*

At several points the factual versions presented by the two principal evidentiary sources (affidavits of Dolkart and Gekas) diverge. In resolving conflicts this Court has credited Dolkart's detailed sworn statements in his affidavit, both because they are so much more particularized than Gekas' conclusory statements and because they are consistent with the undeniably limited scope of Dolkart's involvement in the matters at issue.

This Court recognizes the parties' different motivations for deciding to proceed solely on the initial affidavits, as stated in their joint motion to rule on a stipulated record:

1. This Court ruled that Plaintiffs produced sufficient evidence to defeat the Defendant's Motion for Summary Judgment on the disqualification issue. Following the scheduling of an evidentiary hearing on this issue, Plaintiffs became concerned that their counsel, Silets and Martin, Ltd., may be disqualified solely by virtue of its participation in such a hearing and without regard to the nature of the proof presented at the hearing, *i.e.,* Plaintiffs fear that their counsel may learn privileged confidences and secrets regarding the Chicago Discount Commodity Brokers investigation simply by listening to the evidence produced by Defendant in its efforts to prove its case.

---

even if only condition (a) were found to have occurred. Even on such a reading the result here would be the same. See Conclusion 4.

4. This disposition renders moot the Complaint's other prayer, requesting notice to interested parties of their right to intervene in this action.

2. Defendants are similarly concerned that should the scheduled evidentiary hearing go forward, it may be required to produce evidence that it deems to be privileged confidences and secrets regarding its investigation into the Chicago Discount Commodity Brokers matter.

But because CFTC has opted for that procedure, as Opinion III at 4 said, it "will *not* be heard to say . . . that it had more to offer but did not do so." And as Opinion III at 6 went on to say:

This is not, as CFTC urges, a Hobson's choice.

Analysis in those terms—essentially based on CFTC's failure of proof—would lead to the same result this Court has arrived at independently. In sum, Gekas' summary suggestions of possibly confidential communications—for that is all they amount to—cannot override the specific denials by Dolkart that any disqualifying information was imparted to him. One other factor is important, indeed compelling, in that respect. Dolkart's affidavit makes plain that Gekas called him into a long distance telephone conversation that had been going on for a considerable period of time before Dolkart was brought in. Gekas himself was in on the entire extended conversation, much of which likely had to do with substantive matters, from the beginning. It is entirely understandable (and not a reflection on Gekas' credibility) that he might not have an accurate recollection of what was said or not said during the few minutes Dolkart was in on the telephone conversation. On the other hand, Dolkart's vivid recollection and detailed account of the initial episode (Aff. ¶¶ 19–20) and of all subsequent aspects (Aff. ¶¶ 22–25) of his involvement are highly credible, are credited by this Court, and are incorporated by reference as *detailed* findings in amplification of the Findings in this memorandum opinion and order.