469 A.2d 1051

**CITY OF PHILADELPHIA, Appellant,**

**v.**

**DISTRICT COUNCIL 33, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, by Earl STOUT, as Trustee Ad Litem, and Earl Stout, Albert Johnson, Harry Dargan, Leonard Tilghman, George Wroten, Earl Williams, Edward Simpkins, Edward Williams, and Francis Rooney, Trustees of District Council 33 Municipal Workers Health and Welfare Fund, Appellees.**

Supreme Court of Pennsylvania.

Argued Oct. 25, 1983.

Decided Dec. 30, 1983.

John M. Myers, Deputy City Sol., Philadelphia, for appellant.

Richard A. Sprague, Hillel S. Levinson, Nancy D. Wasser, Philadelphia, for appellees.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

ZAPPALA, Justice.

This case concerns a dispute arising out of a collective bargaining agreement between plaintiff-appellee, District Council 33, American Federation of State, County and Municipal employees (union) and defendant-appellant, the City of Philadelphia (city). The union filed suit in the Court of Common Pleas of Philadelphia, seeking to compel the city to pay certain funds allegedly due under the agreement into the union's health and welfare fund. The union was represented by Hillel S. Levinson, Esquire, and his firm, Sprague and Rubenstone. The city filed a motion to disqualify Levinson and his firm on the basis of a conflict of interest, in that Levinson, as managing director of the city, had represented the city in negotiating the collective bargaining agreement. The court denied the motion. The Superior Court denied the city's petition for review. We granted a petition for allowance of appeal.

The union contends that we have no jurisdiction, as the matter is interlocutory and unappealable. We reject that contention. An interlocutory appeal may be taken by permission, Rule of Appellate Procedure 1311. Furthermore, this Court has the power to assume plenary jurisdiction at any stage of a matter involving an issue of immediate public importance. *See Silver v. Downs*, 493 Pa. 50, 425 A.2d 359 (1981).

Levinson and William Grab, an employee of the city's personnel department, testified during the evidentiary hearing on the motion for disqualification. The record establish-

es that Levinson was the Managing Director of the city from 1972 to 1980 (N.T. 5). One of his duties as Managing Director was signatory for the city (N.T. 18). In this capacity, Levinson executed the collective bargaining agreement negotiated between the city and union for the 1975–1976 contract year. Although Levinson initially testified that he did not participate in the labor negotiations culminating in the agreement, he later indicated he was in fact involved in the negotiations (N.T. 7, 70). Levinson stated his involvement at the negotiating table was limited, however, to matters affecting the daily operation of departments which he supervised. Levinson testified that Lennox Moak, the city's financial director, handled the negotiations involving health benefits (N.T. 86).

Prior to the initial negotiating session between the city and union regarding the 1975–1976 labor agreement, the union's president forwarded a copy of the contract proposals to Levinson and the mayor. A memorandum by Jack Soloff, the city's labor consultant, was subsequently circulated to four city officials, including Levinson, stating that the union's contract proposals would be submitted formally and explained at the first negotiating session. The proposals included an increase in union members' monthly health and welfare benefits. Levinson's recollection at the hearing was that he did not discuss the health and welfare provision with anyone in the union and that he had no active role in negotiations involving the provision (N.T. 17).

Handwritten notes made by Levinson during the negotiations, and numerous documents from the negotiations, including cost projections of proposals, which he had received, were submitted into evidence. One document entitled, "NEGOTIATIONS BETWEEN CITY OF PHILADELPHIA AND DISTRICT COUNCIL 33" listed contract proposals, including proposals involving health and welfare benefits, which were submitted in various bargaining sessions. Notations related to the proposals in Levinson's handwriting appeared on the document. Levinson could only speculate as to the source of his information from which his notes

were made (N.T. 54). It is apparent, however, that he was continually aware of the progress of the negotiations through his active participation and through conversations with Moak, Soloff, and Lew Taylor, the city's personnel director.

William Grab participated in the 1975–1976 contract negotiations as "staff to the personnel director and to the negotiating team" (N.T. 92). Grab was present during the negotiations and testified that meetings were held with Levinson prior to negotiations (N.T. 93). Grab further testified that Levinson would head the negotiations when Soloff was absent due to illness, and that Levinson and Soloff would share the responsibility at other times (N.T. 93–4).

■ This case is governed by the Code of Professional Responsibility and specifically by Disciplinary Rule 9–101(B), which states that

"A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee."

and by Ethical Consideration 9–3, which states that

"After a lawyer leaves judicial office or other public employment, he should not accept employment in connection with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists."

There is a significant risk that the interest the attorney represents as private counsel will conflict with the interest that he or she represented as a public employee. Such conflict or potential conflict results in impropriety or the appearance of impropriety, which is a basis for the disqualification of the attorney. This is illustrated by a number of cases. *General Motors Corp. v. City of New York*, 501 F.2d 639 (2d CIR.1974) involved an attorney who, while employed by the Justice Department, participated in an anti-trust case against a bus manufacturer, signing the

complaint and having substantial responsibility in the investigatory and preparatory stages. The attorney was disqualified from representing New York City in a class action suit against the manufacturer alleging a nationwide bus monopoly. In *Commonwealth v. Eastern Dawn Mobile Home Park, Inc.*, 486 Pa. 326, 405 A.2d 1232 (1979), we held that a former public prosecutor who investigated complaints against a mobile home park, effectuated a compromise, and issued a formal report finding that the park did not violate the Mobile Home Park Rights Act, Act of November 24, 1976, P.L. 1176, No. 261, 68 P.S. § 398.1 et seq., was disqualified from subsequently representing the owners and operators of the park in a matter almost identical to the one he was involved in while a public prosecutor.[1] We applied the disqualification to the attorney's entire firm, holding that where an attorney was barred by ethical considerations from representing a particular client, all attorneys in the same firm would be similarly barred. In *American Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 389 A.2d 568 (1978), we held that it was improper for an attorney to represent a general contractor or subcontractor in a suit against the City of Philadelphia to recover for delays and other problems allegedly caused by a city agency's supervision of construction. There it was shown that a partner in the firm was the senior vice-president of the agency itself, and a member of its executive committee and board of directors. In those capacities, he had substantial responsibility for the agency's activities. This was sufficient for disqualification, even though he was not an attorney for the agency.

The "appearance of impropriety" is an amorphous concept. The public interest in the ethical administration of justice which is protected by this concept is not fairly served without defining the perimeters of the conduct which will give an appearance of impropriety. The concept should not be used to satisfy a *subjective* conscience affronted by the representation of counsel in a particular matter. There-

---

1. The opinion of the Court was equally divided.

fore, the mere facts that Levinson was the managing director of the city in 1975, and that he is now a member of a law firm representing a client in an action against the city, will not be sufficient to disqualify him or his law firm in the union's action. Those facts alone do not create an appearance of impropriety.

The public interest is reasonably served by establishing objective criteria to guide a trial court in its consideration of a motion for disqualification. The criteria need not be inflexible to satisfy this purpose. Under the factual circumstances of this case, we find that Levinson, in his capacity as managing director, had substantial responsibility in the negotiation process which resulted in the labor agreement which is involved in the dispute in the underlying action. Levinson's position as managing director during the 1975–1976 contract year, his actual involvement in the negotiation process on behalf of the city, and his personal knowledge of the negotiations of the contract proposals, and of the decision-making process by the city and its officials, all relevant to the issue presented in the underlying action, preclude representation of the union by Levinson or the law firm of which he is a member.

Levinson's claim that he has no present recollection of the conversations among city officials or the negotiations regarding the health benefits clause is not relevant to our determination of whether he and his law firm should be disqualified from representing the union in this particular action.[2] Whether or not Levinson will be able to use the knowledge which he acquired during the negotiations to the union's advantage is immaterial because this Court has never required a showing of potential or actual damage for disqualification. Our finding that Levinson, as managing director of the city, had substantial responsibility for negotiating the collective bargaining agreement on which this action is based is sufficient to require that he and his firm be disqualified.

2. In order to resolve the parties' dispute, the trial court will be required to review the entire agreement, not just the health benefits clause.

The Order of the Superior Court is reversed and Hillel Levinson and the firm of Sprague and Rubenstone are disqualified from representing the union in this case.

McDERMOTT, J., filed a concurring and dissenting opinion.

NIX, J., filed a dissenting opinion.

HUTCHINSON, J., filed a dissenting opinion.

McDERMOTT, Justice, concurring and dissenting.

This case raises two distinct issues: whether Mr. Levinson's law firm as a whole should be disqualified from representing District Council 33 in an action against the City of Philadelphia, and whether Mr. Levinson should be disqualified from participation in the litigation.

I would agree with Mr. Justice Nix that the firm's representation of the union in this litigation does not implicate the type of appearance of impropriety which requires its disqualification if, after a further evidentiary hearing, it is found that Mr. Levinson has not participated in the litigation thus far.  However, I concur with that part of the majority's opinion holding that Mr. Levinson himself should be disqualified from any involvement in the litigation [1] even though the action in controversy is not over a contract which Levinson negotiated.[2]

Since the construction of that language will be the significant issue in the litigation, there would be an appearance of impropriety if Mr. Levinson was in any way involved in litigating the language in a contract which he once played a significant role in negotiating.  The appearance of impropriety would disappear with Mr. Levinson out of the picture,

1. I also agree with the majority that this case is properly within our jurisdiction.  Considering the important public nature of this issue, this Court may exercise its plenary jurisdiction.  42 Pa.C.S.A. § 726. Further, an interlocutory appeal may be taken by permission under 42 Pa.C.S.A. § 702(b), Pa.R.App.P. 1311.

2. The contract which is in dispute was negotiated in 1982 after Mr. Levinson left office.  However, the language in controversy is identical to language in a contract which was negotiated by Mr. Levinson by virtue of a continuity clause in the 1982 contract.

and the union would not be prejudiced by having to seek new counsel.

Further, Mr. Levinson should be carefully shielded from any participation in the matter. This means that he be denied access to all relevant files and related documents, that he be excluded from receiving any fees derived from the case, that attorneys in the firm refrain from discussing the litigation in his presence, and that he not disclose any information regarding the negotiations of 1975 to members of his law firm. *See Armstrong v. McAlpin*, 625 F.2d 433, 442–443 (2d Cir.1980), *vac. on other grounds, McAlpin v. Armstrong*, 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981).

The practice of screening former government attorneys from cases in which they played a role while in the government has been used previously. In *Kesselhaut v. United States*, 555 F.2d 791, 214 Ct.Cl. 124 (1977), the law firm of a former general counsel of the Federal Housing Administration was not disqualified from a case brought against the FHA by the firm; rather, he was screened from participation in the litigation and would not collect any fees derived from the case. The Court stated that the "inexorable disqualification of an entire firm for the disqualification of a single member or associate, is entirely too harsh and should be mitigated by appropriate screening. . . ." *id.* 555 F.2d at 793. *See also, Armstrong v. McAlpin, supra., Kadish v. Commodity Futures Trading Commission*, 553 F.Supp. 660 (N.D.Ill.1982); *Central Milk Producers Co-Op v. Sentry Food Stores, Inc.*, 573 F.2d 988 (8th Cir.1978).

My view is fully consistent with the disciplinary rule governing such a situation. Disciplinary Rule 9–101(B) provides:

A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

Ethical Consideration 9–3 further provides:

After a lawyer leaves judicial office or other public employment, he should not accept employment in connection

with any matter in which he had substantial responsibility prior to his leaving, since to accept employment would give the appearance of impropriety even if none exists.

The clear language of the Rule and the Ethical Consideration uses the word "lawyer," and does not mandate that the law firm of a lawyer, who had a substantial role in a matter while a public employee, be disqualified in every case. The extension of DR 9–101(B) proposed by the majority goes too far. A *per se* rule requiring the disqualification of an entire law firm when an individual lawyer of that law firm is disqualified is not mandated by DR 9–101(B). Such a *per se* rule is unfair to litigants, and is impractical, considering the great degree of interchange of lawyers from the public to the private sector. Rather, case-by-case analysis is required to examine whether an entire law firm need be disqualified to remove any appearance of impropriety under Canon 9.

The holding of the majority requiring the disqualification of the law firm is also contrary to the way in which Rule 1.11(a) of the Model Rules of Professional Conduct, addresses such a situation. The rule, recently proposed by the American Bar Association and under consideration by this Court, speaks in terms of individual attorneys, like DR 9–101(B), and provides:

RULE 1.11 Successive Government and Private Employment

(a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

(1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and

(2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule.

The proposed rule, and the rule I urge in this opinion provides a rational balance allowing a litigant the freedom to choose counsel as he wishes, while, at the same time, avoiding the appearance of impropriety.

Thus, I would remand this proceeding for further hearings to inquire whether Mr. Levinson has been involved in the litigation of this case and if he has, his firm should be disqualified as well in order to dispel any appearance of impropriety. If, on the other hand, Mr. Levinson has not been involved in the case, his firm could continue to represent the union, with Mr. Levinson screened from participation in the case.

NIX, Justice, dissenting.

I agree with the conclusion of Justice Hutchinson that we should not have entertained a review of this uncertified interlocutory order for substantially the reasons set forth in his dissent. Moreover, if we must consider the matter upon the record before us, I find no basis to justify the exclusion of the members of the law firm to which Mr. Levinson presently belongs.

There is serious question in this record as to whether Mr. Levinson personally has played any role in the representation of the appellees in this case. It is conceded that there is no evidence of an actual conflict which would in any way prejudice the appellant in the trial of this litigation. What is being charged is that Mr. Levinson's former position as Managing Director for the City of Philadelphia creates an appearance of impropriety which offends Cannon 9 of the Code of Professional Responsibility.[1] Even if we were to accept the majority's premise that a violation of Canon 9 has been established on this record,[2] that violation does not

1. Canon 9 provides:
   A lawyer should avoid even the appearance of impropriety.

2. Disciplinary Rule 9–101(B) provides:

warrant the creation of a *per se* rule requiring the automatic disqualification of a law firm of which the violator may fortuitously be a member, without some showing that the continued representation of the firm either gives an unseemly advantage to one side or an unfair disadvantage to the other.

The underlying litigation involves intricate issues of law and hotly contested questions of fact arising from a relationship between the parties which involves a protracted intertwined set of circumstances and spans a substantial period of time. During much of this period this law firm has represented the appellees and is presently intimately acquainted with the issues of fact and law that must be resolved. At this juncture, to force the withdrawal of counsel and to require one side to seek new and unfamiliar representation in the heat of the legal controversy, seriously offends the right of a party to have effective counsel of their choice. This is particularly true where the order of removal of counsel is mandated by a *per se* rule and is not dictated by the equities of the situation.[3]

The majority attempts to support its creation of this new *per se* rule of absolute disqualification solely by reliance upon an Opinion in Support of Affirmance in a decision where the Court was equally divided as to the question of the disqualification of the firm. *Commonwealth v. Eastern Dawn Mobile Home Park, Inc.*, 486 Pa. 326, 405 A.2d 1232 (1979).[4] In that decision I shared the view of those

> A lawyer should not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

**3.** If there has been an ethical violation, as is claimed, it can be adequately handled under our rules of disciplinary enforcement. Such a disposition is not only appropriate, Pa.R.D.E. 201 and 203, but would not unfairly prejudice the litigant who is not in any way responsible for any alleged misconduct.

**4.** An equally divided Court does not establish precedent for either side of the issue. See Roberts, The Supreme Court of Pennsylvania: Constitutional Government In Action, 54 Temp.L.Q. 403 (1981). See also, *Bata v. Central-Penn National Bank of Philadelphia*, 448 Pa. 355, 373, 293 A.2d 343, 353 (1972).

who determined that disqualification was not required, *Id.*, 486 Pa. at 333, 405 A.2d at 1235; I am still not convinced of the wisdom of the contrary position. While we at all cost must maintain a perception of propriety, we should not indulge in an overfastidous application of our rules, thereby creating an unfairness where none previously existed.[5] *Accord, Siebert, et al. v. Bird, et al.*, No. 38 W.D. Allocatur Dkt. 1983 (filed 4/1/83, Nix, J., dissenting, joined by McDermott, J.).

Since the majority today appears bent upon establishing a new *per se* rule, it is appropriate to note that such a requirement goes far beyond the requirement of the Model Rules of Professional Conduct proposed by the American Bar Association and presently under consideration for adoption by this Court.[6] It is to be noted that Rule 1.11(a) of those Model Rules does not require the automatic and absolute disqualification of the firm mandated by the majority.

I am therefore compelled to dissent.

HUTCHINSON, Justice, dissenting.

I agree with the majority that this record shows that Mr. Levinson's representation of the Union violates D.R. 9–101(B) of our Code of Professional Responsibility. How-

5. The Opinion in Support of Reversal in Eastern Dawn stressed that a *per se* absolute disqualification based solely upon an allegation of the *appearance* of impropriety is an affront to "our adversarial system of dispute resolution". *Id.*, 486 Pa. at 334, 405 A.2d at 1236.

6. Rule 1.11(a) of the Model Rules of Professional Conduct states:
   RULE 1.11 Successive Government and Private Employment
   (a) Except as law may otherwise expressly permit, a lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency consents after consultation. No lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:
   (1) the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom; and
   (2) written notice is promptly given to the appropriate government agency to enable it to ascertain compliance with the provisions of this Rule.

ever, I must dissent from the majority's decision to review the uncertified interlocutory order of the Court of Common Pleas of Philadelphia denying the City's motion to disqualify Mr. Levinson. The majority's decision serves only to further delay the resolution of the merits of this already longstanding dispute between the City and its employees over the meaning of the labor contract they entered into. It does so, moreover, without the benefit of a full explication in the trial court of the effect this conflict may have on the fairness of the litigation. Such delay is particularly objectionable in disputes involving the meaning of collective bargaining agreements. In such a posture, I would refer this matter to our disciplinary procedure and let resolution of the main dispute go forward as promptly as possible.

The City of Philadelphia has not alleged that it is prejudiced in any way by Mr. Levinson's representation of the Union in this litigation. The City's sole basis for its motion to disqualify Mr. Levinson is that his representation violates Canon 9 and D.R. 9–101(B) of our Code of Professional Responsibility. Therefore, this case is factually distinct from *American Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 389 A.2d 568 (1978). In *American Dredging Co.* the City moved to disqualify counsel for American's subcontractor, a party in interest in American's suit, because he was an officer and Board member of the Port Corporation. The City claimed, *inter alia*, that counsel had acquired confidential information regarding the facts of the litigation commenced by American. We held that counsel's representation of the sub-contractor violated Canon 4's admonition that a lawyer should preserve the confidences and secrets of a client. Moreover, in *American Dredging Co.*, counsel's representation violated Canon 5 of the Code which requires a lawyer to refuse employment when the interests of the lawyer may impair his independent professional judgment. Disqualification pursuant to an interlocutory appeal may be required in such cases because of the manifest actual prejudice to a party or parties to the litigation.

However, a violation of Disciplinary Rule 9–101(B) does not necessarily result in actual prejudice to a party. Moreover, in the present case the City does not even allege that it does.

In a dictum in *American Dredging* this Court did suggest that a violation of Canon 9's admonition that "[a] Lawyer Should Avoid Even the Appearance of Impropriety" and D.R. 9–101(B)'s prohibition of acceptance of private employment in any matter in which an attorney had substantial responsibility while a public employee require disqualification. I disagree with that dictum and the majority adherence to it here.[1]

This Court has established disciplinary rules governing the conduct of lawyers and a system of sanctions to enforce those rules. In the absence of a showing that a violation of those rules is prejudicial to an adverse party I would not impose disqualification as a sanction.

This Court has adopted a comprehensive set of rules for enforcing the Code of Professional Responsibility. *See* Pa.R.D.E. 101–219. Those rules provide for investigation and hearings by the Disciplinary Board to determine if a violation of the Code exists and, if so, the appropriate sanction. That procedure is well adapted to the resolution of disputed factual questions. Our review of a cold record on an uncertified interlocutory appeal where the trial court has not spoken to those issues is not so adapted.

In some cases the trial court must, initially, regulate the conduct of attorneys practicing before it. *See American Dredging Co., supra.* A trial court's responsibility for enforcing the Disciplinary Code, however, should be limited to violations which have a demonstrable effect on the conduct of the litigation and are likely to be so prejudicial to

---

1. Likewise, I would decline to follow Justice O'Brien's opinion in support of affirmance in *Commonwealth v. Eastern Dawn Mobile Home Park,* 486 Pa. 326, 405 A.2d 1232 (1979) holding that the trial court properly disqualified counsel because of a violation of D.R. 9–101(B).

one or more parties to the litigation that appellate review would be ineffective.

I do not believe that this Court should, as a general rule, review interlocutory orders denying a party's motion to disqualify counsel. In *Firestone Tire and Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) the United States Supreme Court held that denial of a motion to disqualify is not "effectively unreviewable on appeal from a final judgment" and as such was not appropriate for interlocutory review under the collateral order doctrine. In *Firestone* the United States Supreme Court stated:

> Under § 1291, the courts of appeals are vested with "jurisdiction of appeals from all final decisions of the district courts ... except where a direct review may be had in the Supreme Court." We have consistently interpreted this language as indicating that a party may not take an appeal under this section until there has been "a decision by the District Court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" .... This rule, that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits, serves a number of important purposes. It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial. Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system. In addition, the rule is in accordance with the sensible policy of "avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment."

*Id.* at 374, 101 S.Ct. at 673 (citations and footnotes omitted).

While I agree that this Court has the power under Pa.R. A.P. 1311 to review interlocutory orders by permission, I

believe that rule limits our power to review such orders to matters which the lower court has certified pursuant to 42 Pa.C.S. § 702. The trial court refused to do so in this case. Moreover, I find the reasoning of the United States Supreme Court in *Firestone* persuasive. Finally, assumption of plenary jurisdiction here would directly conflict with the disciplinary procedure we have wisely prescribed. Therefore, I do not believe it should serve as a basis for our hearing this case at this time.

I would dismiss this appeal as improvidently granted.