**John CARACCIOLO, and Mary Caracciolo**

v.

**James C. BALLARD, and the Philadelphia Parking Authority.**

No. 87–2840.

United States District Court, E.D. Pennsylvania.

Jan. 12, 1988.

John K. Weston, Sacks, Basch, Brodie & Sacks, Philadelphia, Pa., for plaintiffs.

S. David Fineman, Hunt & Fineman, Philadelphia, Pa., for Philadelphia Parking Authority.

Joseph Goldberg, Margolis Edelstein Scherlis Sarowitz & Kraemer, Philadelphia Pa., Marc B. Zingarini, for Philadelphia Parking Authority and J.C. Ballard.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

Defendants James C. Ballard and the Philadelphia Parking Authority move to disqualify plaintiffs' counsel under Disciplinary Rule 9–101(B) of the Pennsylvania Code of Professional Responsibility. By Local Rule, the Pennsylvania Code is binding on the attorneys who practice before this court.[1] Essentially, defendants argue that the firm retained by the plaintiffs are barred from litigating this suit because one of the firm's partners was once employed by the defendant Authority. Because the Pennsylvania Code provides no basis for the proposed disqualification under the circumstances presented, defendants' motion will be denied.

John and Mary Caracciolo claim that in August of 1985 they were assaulted by defendant James C. Ballard, an employee of the defendant Philadelphia Parking Authority (the "Authority"). The assaults allegedly occurred after Mr. Caracciolo argued with Mr. Ballard—Mr. Ballard supposedly first struck Mr. Caracciolo, and then struck Mrs. Caracciolo as she knelt to help her husband. Plaintiffs further allege that they were subjected to arrest and prosecution by Philadelphia authorities based on Mr. Ballard's misrepresentations about the incident to the police, and on his subsequent filing of false criminal charges. Plaintiffs seek damages for infringements of their constitutional rights under section 1983 of the federal civil rights acts, 42 U.S.C. § 1983, and under various state law theories including negligent supervision, battery, and defamation.

---

1. *See* Local Rule of Civil Procedure 14(IV)(B). The Code governs professional conduct in Pennsylvania until the new Rules of Professional Conduct take effect on April 1, 1988. *See* Pa. Bull. Vol. 17, No. 45, at 4509 (November 7, 1987).

Plaintiffs retained the firm of Sacks, Basch, Boride & Sacks to represent them in this lawsuit. The defendants allege that one of the firm's senior partners, Charles Basch, Esq., served as "special counsel" to the Parking Authority from 1975 to 1983, two years before Mr. Ballard's alleged assault took place. Defendants argue that Mr. Basch's resulting familiarity with the Authority's management structure, its legal operations, and its employment policies provides the plaintiffs with an unfair advantage in presenting their claims. Defendants also allege that Basch "presumably" participated in defending the Authority against personal injury claims, thereby gaining access to "confidential materials" and "inside knowledge" about the Authority's handling of such matters. However, none of the defendants' allegations about Mr. Basch's role at the Authority are supported by affidavit or by verified pleading. In response, the plaintiffs admit that Basch was once employed by the Authority as special counsel, but add that he did not work on matters that are in any way related to this lawsuit. According to the plaintiffs, the Authority retained Mr. Basch not to work on personal injury cases, but to provide legal guidance on contract matters, particularly those pertaining to construction projects. The plaintiffs have provided an affidavit executed by Mr. Basch in which he attests to this characterization of his employment by the Authority. In his affidavit, Mr. Basch also specifically denies any involvement in personal injury suits filed against the Authority, and in formulating or carrying out the Authority's hiring policies.

The professional obligations to be observed by plaintiffs' counsel in this situation are set out in Ethical Consideration 9–3 and Disciplinary Rule 9–101(B) of the Pennsylvania Code of Professional Responsibility. These rules are intended to promote public confidence in the integrity of the bar by guarding against attorney impropriety or even the appearance of such impropriety. DR9–101(B)'s specific concern is with the "revolving door" through which attorneys move in and out between government practice and the private sector.

The rule is meant to discourage public employees from tailoring performance of their official duties in ways calculated to advance their employment opportunities after leaving public service, and to deter former public employees who have acquired confidential information during public service from using that information adversely to the government in the course of their private practice. *See Price v. Admiral Ins. Co.*, 481 F.Supp. 374, 378 (E.D.Pa.1979); Committee on Professional Ethics of the American Bar Association, *Formal Opinion 342*, 62 A.B.A.J. 517 (1976).

Under DR9–101(B), a lawyer is prohibited from accepting private employment "in a matter in which he had substantial responsibility while he was a public employee." *See* 42 Pa.Cons.Stat.Ann. DR9–101(B) (Purdon, 1987). The prohibition applies even if the lawyer is guilty of no impropriety, because accepting employment under such circumstances can give the appearance of impropriety. *See* 42 Pa.Cons.Stat. Ann. EC 9–3 (Purdon, 1987); *City of Philadelphia v. District Council 33*, 503 Pa. 498, 469 A.2d 1051, 1053 (1983). Moreover, the Pennsylvania courts have concluded that if a lawyer is disqualified from representing a particular litigant under this rule, his or her entire firm is barred from participation in the suit. *See American Dredging Co. v. City of Philadelphia*, 480 Pa. 177, 389 A.2d 568, 572 (1978).

In applying 9–101(B), however, a court should not let its legitimate concern with deterring professional misconduct operate to frustrate unnecessarily a party's choice of representation, or to diminish the effectiveness of that representation. *See American Dredging*, 389 A.2d at 572. As noted by the ABA in its formal opinion on 9–101(B)'s application, "the rule serves no worthwhile public interest if it becomes a mere tool enabling a litigant to improve his prospects by depriving his opponent of competent counsel." *Formal Opinion 342*, 62 A.B.A.J. at 518. The Code of Professional Responsibility is applied to deter professional misconduct, and to preserve the profession's standing in the community—it was not intended as an addition to

the depressingly formidable array of dilatory strategies already part of the litigator's arsenal.

The defendants' motion lacks merit because it fails to demonstrate any connection between this lawsuit and any matter over which Mr. Basch exercised substantial responsibility while retained by the Authority. The fact that Mr. Basch was once employed by the defendant Authority and is now a member of the firm that represents the plaintiffs in this lawsuit is not in and of itself a reason to disqualify plaintiffs' counsel. *See District Council 33,* 469 A.2d at 1054. DR 9–101(B)'s prohibition is more specific than general: it bars a lawyer's participation in *matters* over which the lawyer had responsibility as a public employee. The rule does not explicitly define the term "matter," but it has been read to describe a discrete and isolatable transaction or set of transactions between identifiable parties. *See Formal Opinion 342,* 62 A.B.A.J. at 519. The Pennsylvania courts have adopted no one definition of the term "matter" in this context, but they have acted to disqualify former government lawyers who seek to represent parties in disputes involving transactions for which they had substantial responsibility as public employees.[2]

The defendants do not identify the specific transactions, projects, or contracts on which Mr. Basch worked while retained as special counsel to the Authority that might bear on the Caracciolo's claim. Instead, they "presume" that Mr. Basch's responsibilities included defending the Authority against plaintiffs like the Caracciolos. This nebulous description of Mr. Basch's involvement with the Authority's legal matters, without more, provides no basis for suspecting Mr. Basch of manipulating his public responsibilities for private gain, or of using confidential information to compromise the Authority in this suit or in any suit like this one. In short, the defendants have pointed to nothing in Mr. Basch's former duties for the Authority that creates even the appearance of impropriety in his firm's continued representation of the plaintiffs.

The fact that Mr. Basch may have acquired a better than average working knowledge of the Authority's administrative operations does not lead to a contrary conclusion. Lawyers who acquire legal or administrative expertise in the public sector, and who subsequently put that knowledge to use in their private employment, are not acting unethically. Indeed, the opportunity to acquire such expertise attracts capable lawyers to government service, thereby serving the public's interest in quality representation. It is not this general acquisition of knowledge about an agency's activities that DR9–101(B) was intended to deter, but rather the actual or apparent exploitation for private gain, and frequently to the Government's detriment, of information about particular transactions or investigations involving identifiable parties. *See Price,* 481 F.Supp. at 378.

No such conflict has been demonstrated in this case. It would be unfair to the plaintiffs if the court were to disregard their choice of counsel on so insubstantial a showing. Accordingly, defendants' motion is denied. An appropriate order follows.

---

**2.** *See, e.g., District Council 33,* 469 A.2d at 1053–54 (firm of former city managing director disqualified from representing union in litigation involving a collective bargaining agreement which managing director was responsible for negotiating); *Com. of Pa. v. Eastern Dawn Mobile Home Park,* 486 Pa. 326, 405 A.2d 1232, 1234 (1979) (firm of former county deputy district attorney barred from defending trailer park in litigation involving anticompetitive conduct that attorney had investigated and prosecuted as government employee). *See also Price v. Admiral Ins. Co.,* 481 F.Supp. 374 (E.D.Pa.1979) (firm employing an associate who had been as Assistant United States Attorney barred from representing defendants in civil action involving alleged insurance fraud investigated by associate while he was employed by the federal government).