**NFC, INC., et al., Plaintiffs,**

v.

**GENERAL NUTRITION, INC., et al., Defendants.**

Civ. A. No. 82–3451–T.

United States District Court,
D. Massachusetts.

April 19, 1983.

Lappin, Rosen, Goldberg, Slavet, Levenson & Wekstein, Walter D. Wekstein, Boston, Mass., Cohen, Shapiro, Polisher, Shiekman & Cohen, Judah I. Labovitz, Benjamin A. Levin, Philadelphia, Pa., William A. Zucker, Gadsby & Hannah, Boston, Mass., for plaintiffs.

Foley, Hoag & Eliot, Loyd M. Starrett, Peter B. Ellis, Boston, Mass., Milbank, Tweed, Hadley & McCloy, Washington, D.C., for defendants.

## OPINION

TAURO, District Judge.

The immediate issue raised by the parties' cross-motions is whether the Pittsburgh based law firm of Rose, Schmidt,

Dixon & Hasley ("RSD & H"), which serves as general litigation counsel for defendants, should be disqualified from further participation in this anti-trust litigation.[1]

## I. *Factual Background*

The issue of disqualification arises because of certain work done in 1979 by Thomas Burnham, now a partner in RSD & H's Detroit office, while he was with another Detroit firm, Hill, Lewis, Adams, Goodrich & Tait ("HLAG & T"). During that year, Mr. Burnham participated in a preliminary investigation of possible antitrust claims against General Nutrition Center, Inc. ("GNC"), one of the present defendants. He did so on behalf of Nature Food Centres, Inc. ("NFC"), a plaintiff in the present action. After this investigation, HLAG & T submitted a proposed retainer agreement to NFC, but no employment agreement between the two was ever reached. Mr. Burnham left HLAG & T in 1982 to join RSD & H and open its Detroit office. His files on the NFC matter were left at HLAG & T, and he did not retain any material with respect to that investigation.

On November 15, 1982, NFC filed this suit against GNC. The Pittsburgh office of RSD & H, consistent with its role as GNC's general litigation counsel, has represented GNC thus far in this matter. Mr. Burnham, located as he was in the firm's Detroit office, did not learn of the litigation until January 17, 1983. He then promptly informed Harold Schmidt, the senior partner of RSD & H, of the fact that he had participated in a related preliminary investigation while at HLAG & T.

Mr. Schmidt instructed Mr. Burnham not to give him or any other person connected with RSD & H any information about the NFC matter, other than that necessary to alert counsel for plaintiffs and the court to this issue. Mr. Schmidt also circulated a notice to all personnel at RSD & H directing that "[u]nder no circumstances is any-one to discuss with Tom Burnham anything with respect to Nature Food Centres, Inc. or any subsidiary or related company or person."

GNC then requested that NFC permit RSD & H to continue its participation in the case. NFC refused. That refusal precipitated GNC's motion for declaration of qualification, and NFC's cross-motion for disqualification which are now at issue.

## II. *Discussion*

Plaintiffs argue that RSD & H must be disqualified from this case, given the requirements of Canons 4 and 9 of the ABA Code of Professional Responsibility, and the codification of these Canons in the Massachusetts Supreme Judicial Court Rule 3:07 Disciplinary Rules 4–101 and 9–101.

■ Canon 4 provides that "a lawyer should preserve the confidences and secrets of a client." Canon 9 states that "a lawyer should avoid even the appearance of professional impropriety." Courts have interpreted these Canons to prohibit a lawyer from undertaking a representation adverse to a former client on subject matter related to the business with the former client, although there is no Disciplinary Rule explicitly prohibiting such subsequent representation. *See, e.g., Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2d Cir.1973); *Hull v. Celanese Corporation,* 513 F.2d 568 (2d Cir.1975); *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341 (5th Cir. 1981); *T.C. Theatre Corp. v. Warner Brothers Pictures, Inc.,* 113 F.Supp. 265 (S.D.N.Y. 1953). The rationale for this prohibition is twofold. First, adverse subsequent representation entails a risk that the former client's interests could be jeopardized by disclosure or misuse of its confidential communications. Second, for a lawyer to switch sides on the same or a related controversy would create an appearance of impropriety and serve to undermine the public's confidence in the integrity of the legal profession.

---

1. RSD & H is not yet counsel of record, but has been performing services for defendants in connection with this case.

There certainly is an inherent risk that a client's confidences and secrets could be revealed or misused should a lawyer subsequently accept employment on behalf of an adverse party with respect to a related matter. In order to guard strictly against this risk, subsequent adverse representation has been prohibited, irrespective of whether or not client confidences were actually received in the course of the first representation. Under the standard enunciated by Judge Weinfeld in *T.C. Theatre, supra,* disqualification is warranted on a mere showing that the subject matter of a lawyer's subsequent adverse representation is "substantially related" to that for which the lawyer represented the former client.

■ The wisdom of applying Judge Weinfeld's proscription to cases of subsequent adverse representation by the *same* lawyer or firm is clear. More troublesome, however, is the overall fairness of imposing such an absolute standard when, as here, more complex factors are involved, such as vicarious disqualification, multiple law firm offices, long standing lawyer-client relationships, and lateral transfers of attorneys. It is clear, for example, that Mr. Burnham should not be allowed to represent the defendants in this case, and no one contends to the contrary.[2] But, far less clear is the necessity of disqualifying Mr. Burnham's entire new law firm, RSD & H, given the relevant circumstances. RSD & H never represented NFC. Mr. Burnham will play no role in this litigation. GNC is represented by the Pittsburgh branch of RSD & H, while Mr. Burnham practices in its Detroit office. RSD & H has already initiated steps to insulate Mr. Burnham from any matter involving NFC. GNC and RSD & H have a long standing lawyer-client relationship that predates Mr. Burnham's contact with NFC.

■ There should be, of course, no hesitation to disqualify a lawyer or law firm when such a step is necessary to meet the standards and purposes embodied in the Code of Professional Responsibility. But if there is a less drastic alternative available that will preserve the ethical standards of the profession, and the public's perception thereof, as well as or better than disqualification, that alternative should be utilized.

Disqualification can work a substantial hardship on clients as well as lawyers, particularly where the client and lawyer have had a long ongoing relationship and the litigation involved is complicated. This is not to suggest that ethical standards should give way to a "balancing of the harms" analysis. But care should be taken to avoid applying the disqualification sanction of the Code in a mechanical, computerized fashion. Rather, the factors affecting a particular set of relationships should be carefully analyzed with the purpose of arriving at an individualized judgment and a truly responsive remedy.

In the present case, the court believes that there is an alternative less drastic than disqualification that will more than adequately protect the private and public interests involved. This alternative is a detailed court-ordered and supervised embargo on any communications between personnel of RSD & H and Mr. Burnham with regard to any matter related to this litigation.[3] Such

---

**2.** Plaintiffs contend that if Mr. Burnham is prohibited from representing defendants in this case, then Disciplinary Rule 5–105(D) compels disqualification of Mr. Burnham's firm as well. Rule 5–105(D) provides that "[i]f a lawyer is required to decline employment or to withdraw from any employment under a Disciplinary Rule, no partner or associate or any other lawyer affiliated with him or his firm may accept or continue such employment." This Rule is not dispositive here, however, because no Disciplinary Rule explicitly prohibits subsequent representations of the kind at issue in this case. Rather, the prohibition against such represen-

tation is a court imposed bar designed to guard against violations of Canons 4 and 9 of the Code of Professional Responsibility. It is up to the court to decide whether vicarious disqualification is necessary in a given instance.

**3.** Barriers of this sort have been used in the past to avoid the necessity of disqualifying a firm in matters involving the government when the firm hires a new lawyer who previously worked for a governmental body. *See, e.g., Armstrong v. McAlpin,* 625 F.2d 433 (2d Cir. 1980) (en banc), *vacated and remanded on other grounds,* 449 U.S. 1106, 101 S.Ct. 911, 66 L.Ed.2d 835 (1981) (vacated because of Su-

a court order, carrying with it express and implicit contempt sanctions, can reasonably be expected to ensure that there will be no breaches, inadvertent or intentional, of any confidences or secrets that Mr. Burnham may have learned during his investigation for NFC. Indeed, such an approach should preserve confidences more effectively than would disqualification. Even if RSD & H were disqualified from this litigation, it would still continue to represent the defendants on other matters. There would be, therefore, a continuing risk that Mr. Burnham might inadvertently divulge an NFC confidence or secret to GNC. If RSD & H were merely disqualified, there would be no occasion or opportunity for the court to monitor RSD & H so as to protect the interests of NFC. Under the alternative to disqualification to be utilized here, however, the court will monitor the steps that RSD & H takes to prevent any disclosure.

Utilization of a detailed court order, carrying with it provisions for monitoring and sanctions, not only protects fully the interests of NFC, it also serves to enhance the public's confidence in the manner in which the profession attends to its ethical codes. It should be clear to any reasonably objective person who reads the court's order that the parties and the court have worked diligently to design and implement precautions necessary to ensure against any unethical or potentially prejudicial conduct.[4]

## APPENDIX

### ORDER CONCERNING QUALIFICATION OF ROSE, SCHMIDT, DIXON & HASLEY

#### April 19, 1983

1. This Order disposing of Defendants' Motion for Declaration of Qualification for Continued Participation of the firm of Rose, Schmidt, Dixon & Hasley and Plaintiffs' Opposition and Cross Motion for Disqualifi-

preme Court ruling that orders denying motions to disqualify are not appealable); *Kesselhaut v. United States,* 555 F.2d 791 (Ct.Cl. 1977); *Sierra Vista Hospital, Inc. v. United States,* 639 F.2d 749 (Ct.Cl.1981).

cation is predicated on the following facts which are based on the representations of counsel and the affidavits of Walter D. Wekstein and Ronald L. Rosetti:

(a) On January 17, 1983, Harold R. Schmidt, the senior partner in the Pittsburgh-based law firm of Rose, Schmidt, Dixon & Hasley ("RSD & H"), counsel for defendants herein, discovered that Thomas N. Burnham, who joined the firm and took charge of its new Detroit office on February 1, 1982, had participated during 1979, while a member of the Detroit firm of Hill, Lewis, Adams, Goodrich & Tait ("HLAG & T"), in a preliminary investigation of possible claims by Nature Food Centres, Inc. ("Food Centres") against General Nutrition Center, Inc. and certain affiliated companies (hereinafter referred to as "the NFC matter").

(b) During that investigation, HLAG & T and Mr. Burnham participated in confidential communications with Food Centres and received confidential data, documents and other information from Food Centres.

(c) HLAG & T submitted to Food Centres a proposed retainer agreement whereby Food Centres would retain HLAG & T on a contingent fee basis to pursue the NFC matter, but that agreement was never signed.

(d) Immediately upon discovery of the facts set forth in 1(a) above, Mr. Schmidt instructed Mr. Burnham not to give him or any other person connected with RSD & H any information about the NFC matter other than the information minimally necessary to bring the existence of the NFC matter to the attention of counsel for the plaintiffs and the Court.

(e) On January 28, 1983, Mr. Schmidt directed that the following notice be brought to the attention of all personnel in each of the offices of RSD & H:

4. The court's order is attached as the appendix to this memorandum. With minor modification, it tracks the proposed order submitted to the court by the parties.

"Under no circumstances is anyone to discuss with Tom Burnham anything with respect to Nature Food Centres, Inc. or any subsidiary or related company or person."

(f) Except as indicated in subparagraph 1(d) above, no partner, attorney of counsel, associate or other employee of RSD & H has in fact communicated with Mr. Burnham or received any information from him with regard to the NFC matter.

2. On the basis of these facts, the court orders that RSD & H may continue to represent the defendants in this matter as counsel of record or otherwise, subject to the following conditions:

(a) That no partner, attorney of counsel, associate, other employee of, or consultant (other than Elliot L. Richardson or other personnel of Milbank, Tweed, Hadley & McCloy (herein collectively "MTH & M")) to, RSD & H shall communicate with Thomas N. Burnham with regard to any aspect of any work performed by Mr. Burnham or HLAG & T in connection with the affairs of any of the plaintiffs herein;

(b) That no partner, attorney of counsel, associate, other employee of, or consultant (other than MTH & M) to, RSD & H shall communicate with Thomas N. Burnham with regard to any aspect of this suit;

(c) That Thomas N. Burnham shall not communicate with any partner, attorney of counsel, associate, other employee of, or consultant (other than MTH & M) to, RSD & H with regard to any aspect of any work performed by him or HLAG & T in connection with the affairs of any of the plaintiffs herein;

(d) That Thomas N. Burnham shall not communicate with any partner, attorney of counsel, associate, other employee of, or consultant (other than MTH & M) to, RSD & H with regard to any aspect of this suit;

(e) That no partner, attorney of counsel, associate, other employee of, or consultant (other than MTH & M) to, RSD & H shall during the pendency of this suit, directly or indirectly, exhibit or make available to Mr. Burnham any files, documents, memoranda or other materials generated or produced in connection with this suit;

(f) That Thomas N. Burnham shall not during the pendency of this suit examine, inspect or otherwise seek access to any files, documents, memoranda or other materials generated or produced in connection with this suit; and

(g) That each partner, attorney of counsel, associate, and other employee of RSD & H be shown a copy of this Order.

3. RSD & H shall, at the earliest practical date, but not more than thirty (30) days from the date hereof, file with this Court as a part of the record herein the following documents:

(a) A copy or copies of the declaration appended hereto as Exhibit A, signed under penalty of perjury by each partner, attorney of counsel, associate and the File Clerk of RSD & H, except Thomas H. Burnham;

(b) A copy of the declaration appended hereto as Exhibit B, signed under penalty of perjury by Thomas N. Burnham; and

(c) A copy of the affidavit of Harold R. Schmidt appended hereto as Exhibit C attesting to the fact that the names appearing on the declaration(s) submitted pursuant to subparagraph 3(a) above are the names of all the partners, attorneys of counsel, associates and the File Clerk belonging to or employed by RSD & H as of the date of said affidavit.

4. Furthermore, it is ordered and directed that, so long as this suit is still pending, when any attorney not employed by or connected with RSD & H as of the date of the affidavit referred to in subparagraph 3(c) above thereafter becomes a partner in the firm, becomes "of counsel" to the firm, or is employed as an associate for the firm, such attorney shall be shown a copy of this Order and shall subscribe under penalty of perjury to a copy of the declaration appended hereto as Exhibit A, and each such declaration shall promptly be filed with this Court as a part of the record herein.

So ordered.

## EXHIBIT A

### DECLARATION BY ROSE, SCHMIDT, DIXON & HASLEY

Each of the partners, attorneys of counsel, associates and chief file clerk of Rose, Schmidt, Dixon & Hasley whose names appear below hereby declares, under penalty of perjury, (a) that he or she has read a copy of the Court's Order Concerning Qualification of Rose, Schmidt, Dixon & Hasley, dated ___April 19___, 1983; (b) that he or she will not communicate with Thomas N. Burnham with regard to any aspect of any work performed by Mr. Burnham or the firm of Hill, Lewis, Adams, Goodrich & Tait in connection with the affairs of any of the plaintiffs herein; (c) that he or she will not communicate with Thomas N. Burnham with regard to any aspect of the above-captioned suit; and (d) that he or she will not during the pendency of the suit, directly or indirectly, exhibit or make available to Mr. Burnham any files, documents, memoranda or other materials generated and produced for this suit.

Signed under penalty of perjury:

## EXHIBIT B

### DECLARATION OF THOMAS N. BURNHAM

I, Thomas N. Burnham, hereby declare, under penalty of perjury, that (a) I have been shown a copy of the Court's Order Concerning Qualification of Rose, Schmidt, Dixon & Hasley, dated April 19, 1983; (b) I do not have in my possession, custody or control any documents, memoranda, notes or other materials with regard to any aspect of any work performed by me or the firm of Hill, Lewis, Adams, Goodrich and Tait in connection with the affairs of any of the plaintiffs herein; (c) I will not communicate with any partner, attorney of counsel, associate, other employee of, or consultant (other than Elliot L. Richardson or other personnel of Milbank, Tweed, Hadley & McCloy (herein collectively referred to as "MTH & M")) to, Rose, Schmidt, Dixon & Hasley with regard to any aspect of any work performed by me or the firm of Hill,

Lewis, Adams, Goodrich & Tait in connection with the affairs of any of the plaintiffs herein; and (d) I will not communicate with any partner, attorney of counsel, associate, other employee of, or consultant (other than MTH & M) to, Rose, Schmidt, Dixon & Hasley with regard to any aspect of the above-captioned suit; and (e) I will not during the pendency of this suit examine, inspect or otherwise seek access to any files, documents, memoranda or other materials generated or produced in connection with this suit.

Signed under penalty of perjury, this _____ day of February, 1983.

_____
Thomas N. Burnham

## EXHIBIT C

### AFFIDAVIT OF HAROLD R. SCHMIDT

I, Harold R. Schmidt, have examined the names subscribed to the Declaration(s) by Rose, Schmidt, Dixon & Hasley Attorneys, filed with this Court in accordance with its Order Concerning Qualification of Rose, Schmidt, Dixon & Hasley, dated ___April 19___, 1983. I hereby declare, under penalty of perjury, that the names subscribed thereto are the names of all the partners, attorneys of counsel, associates, and the File Clerk of Rose, Schmidt, Dixon & Hasley as of the date of this affidavit except Thomas N. Burnham.

Signed under penalty of perjury, this _____ day of February, 1983.

_____
Harold R. Schmidt