Ford, J.
Each of the above captioned cases is a medical malpractice case. In each of the three cases, Donald W. Goodrich, Esq., of Donovan & O’Connor, represents the plaintiffs, and Ronald E. Oliveira, Esq. (hereafter “Oliveira”) represents one of the defendants.[1] The plaintiffs have now moved to disqualify Oliveira from further representation of the defendants, on the ground that Dawn M. Rich, Esq. (hereafter “Rich”), who was an associate at Donovan & O’Connor and who personally worked on each of these three cases, is now an associate of Oliveira. The motions were argued before me on May 19, 1994.
I have had occasion to read the motions to disqualify and the oppositions thereto, together with the affidavits and other materials submitted both in support of and in opposition to the motions. In addition, I have read all the cases cited by counsel in their memoranda of law and oral arguments. Having done so, I find that the issue raised by these motions appears to have been discussed extensively by the federal courts and by state courts from certain foreign jurisdictions, but never by the Massachusetts Supreme Judicial Court or Appeals Court. I do have the benefit of a scholarly opinion written by one of my colleagues on the Superior Court, but as far as 1 can tell the issue has never been squarely addressed by the appellate courts of this Commonwealth. Therefore, it is necessary to look to the courts of other jurisdictions for guidance.
I begin with the observation that this Court undoubtedly has the inherent authority to disqualify counsel from a case if the Court feels that the ends of justice require it. “The courts of general jurisdiction... have the inherent power to do whatever may be done under the general principles of jurisprudence to insure to the citizen a fair trial, whenever his life, liberty, property or character is at stake. The possession of such power involves its exercise as a duty whenever public or private interests require.” Crocker v. Justices of the Superior Court, 208 Mass. 162, 179 (1911). I also assume that the issue of whether an attorney should be disqualified is a matter addressed to the sound discretion of the trial court. Henriksen v. Great American Savings and Loan, 14 Cal.Rptr.2d 184, 186 (1992). I understand completely that “disqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose exceptwhen absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship, also serves to destroy a relationship by depriving a party of representation of their own choosing.” Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir., 1982). “Unquestionably, the ability to deny one’s opponent the services of capable counsel is a potent weapon. Confronted with such a motion, courts must be sensitive to the competing public policy interest of preserving client confidences and of permitting a party to obtain counsel of his choice.” Manning v. Waring, Cox, James, Sklar and Allen, 849 F.2d 222, 224 (6th Cir., 1988). Accordingly, “such motions should be viewed with extreme caution for they can be misused as techniques of harassment.” Freeman v. Chicago Musical Instrument Co., supra at 722.
Rule 3:07 of the Supreme Judicial Court provides: “The practice of law by members of the Massachusetts Bar shall be regulated by the Cannons of Ethics and Disciplinary Rules attached hereto and incorporated by reference herein.” DR5-105(A) provides as follows:
A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except the extent permitted under DR5-105(C).
DR5-105(D) provides:
If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner or associate or any other lawyer associated with him or his firm may accept or continue such employment. . .
Here, Rich was actively involved as plaintiffs counsel in each of the above captioned matters. It is uncontested that she had access to and responsibility for each of the plaintiffs’ files while at Donovan & O’Connor, and that she directly communicated with the plaintiffs, drafted pleadings, consulted with experts, and performed other services on the plaintiffs’ behalf. Therefore, it is clear beyond all doubt that Rich, who possesses extensive confidential information about each of the plaintiffs, would be disqualified from representation of any of the defendants in these cases, and no one contends otherwise. The issue is whether Oliveira should be vicariously disqualified.
*420 Consideration of the issue must begin with the notion, widely recognized in the law, that knowledge possessed by one attorney in a law firm is presumed to be shared with other attorneys in that firm. Schloetter v. Railoc of Indiana, Inc., 546 F.2d 706, 710-11 (7th Cir. 1976). For example, in Henriksen v. Great American Savings and Loan, supra, the court held:
We are mindful of the right of parties to counsel of their choice, and of the financial burden imposed if disqualified counsel must be replaced. However, those interests must be balanced against the need to maintain high ethical standards of professional responsibility. Here, the compelling reason for disqualification from misrepresentation is [the attorney’s] former personal involvement on petitioner’s behalf in the identical action. Under these circumstances, the law firm representing the defendant also must be disqualified.
However, as Judge Flannery points out in his erudite analysis of the problem, “the strong trend in the Federal courts [is] that the presumption is rebuttable,” citing U.S. v. Lord Electric Co., 637 F.Supp. 1556, 1564 (W.D. Washington, 1986). Many courts have recognized that, because the presumption is rebuttable, it is appropriate to consider whether a screening mechanism, sometimes referred to as a “Chinese wall” or “ethical wall,” might in some cases allow a law firm to avoid a complete disqualification. See INA Underwriters Insurance Company v. Rubin, 635 F.Supp. 1 (E.D. Pen., 1983). However, the courts which have considered the matter have insisted that a very strict standard of proof be applied to the rebuttal of the presumption, and have held that any doubts as to the existence of the effectiveness of a Chinese wall must be resolved in favor of disqualification. LaSalle National Bank v. County of Lake, 703 F.2d 252, 257 (7th Cir.) 1983); Westinghouse Electric Corp. v. Gulf Oil Corp., 588 F.2d 221, 225 (7th Cir., 1978).
Of course, the effectiveness of such insulating mechanisms must be evaluated on a case-by-case basis. The typical elements of a Chinese or ethical wall are: physical, geographic and departmental separation of attorneys: prohibitions against and sanctions for discussing confidential matters; established rules and procedures preventing access to confidential information and files; procedures preventing a disqualified attorney from sharing in the profits from representation; and continuing education in professional responsibility. Henriksen v. Great American Savings and Loan, supra at 188 n.6. In evaluating the effectiveness of such a screening device, the court may consider, inter alia, the following factors: the size and structural divisions of the law firm involved, the likelihood of contact between the tainted lawyer and the specific lawyers responsible for the present representation, and the existence of rules which prevent the tainted lawyer from gaining access to relevant files or other information pertaining to the present representation or which prevent the tainted lawyer from sharing in the fees derived from representation. Nelson v. Green Builders Inc., 823 F.Supp. 1439, 1447 (E.D. Wis., 1993). The Nelson court went on to comment: “It thus appears that in the 7th Circuit, a mere informal understanding as to nonparticipation, and uncontra-dicted affidavits denying past or future sharing of confidences within the targeted law firm, are insufficient to rebut the presumption of intra-firm sharing.” Id. at 1448.
After reviewing all relevant material, I am left with a discomforting level of uncertainty and a substantial doubt as to whether a Chinese wall could truly be effective in the instant case. Oliveira is a solo practitioner. Rich is his one and only associate. That fact alone indicates that the two of them must necessarily have a close working relationship. It is reasonable to assume that they see each other and discuss the affairs of the office on a daily basis. The papers submitted to me are silent on the nature of the financial relationship between Rich and Oliveira, but I infer that, as an associate, Rich is at least partially dependent upon Oliveira for payment of a salary. Therefore, she would have a natural interest in the fees earned by Oliveira and in the development of relationships with well paying clients, such as insurance companies and doctors. If Oliveira were to reap substantial fees by virtue of his representation of these defendants, there is every reason to believe (and no indication to the contrary) that Rich would share, at least indirectly, in his good fortune. Moreover, there is nothing in the papers submitted to me dealing with the issue of what rules and procedures have been established to prevent the inadvertent disclosure of confidential information by Rich to Oliveira, what sanctions there would be if such disclosure occurred, and what assurance the plaintiffs and the Court would have that any such disclosure would be promptly reported. Although I have absolutely no doubt about Oliveira’s and Rich’s integrity or about the sincerity of their efforts to prevent any disclosure of confidential information, I am simply not convinced that a Chinese wall would be truly effective under the circumstances of this case. “If after considering all of the precautions taken by [Rich and Oliveira], this court still harbors doubts as to the sufficiency of these preventative measures, then we can hardly expect [the plaintiffs] or members of the public to consider the attempted quarantine to be impenetrable.” Cheng v. GAF Corp., 631 F.2d 1052, 1058 (2nd Cir., 1980).
The defendants point to two cases which, they assert, support their position that a Chinese wall could effectively be constructed in this case. Those two cases are N.F.C., Inc. v. General Nutrition, Inc., 562 F.Supp. 332 (D.Mass., 1983), and First National Bank of Ipswich v. Peabody, Gunner, Hill, Inc. (Suffolk Superior Court Civil Action No. 92-5172-J, Flannery, J., August 2, 1993). I have read those cases carefully, and I conclude that their facts do not compare favorably *421 with the facts of the instant case. In N.F.C., Inc. v. General Nutrition, Inc., the law firm in question (hereafter “RSD&H”) was a large firm with offices in both Detroit and Pittsburgh. The tainted lawyer, who merely participated in a preliminary investigation of a possible anti-trust claim against General Nutrition, Inc. while with another Detroit firm, was subsequently employed by RSD&H in their Detroit office. The matter in question was being handled out of the Pittsburgh office by other members of RSD&H. The court relied upon the fact that this geographical and departmental separation existed when it decided that the drastic remedy of disqualification was unnecessary, and held that a court-ordered embargo on any communications between the tainted attorney and lawyers involved with the litigation was sufficient. Obviously, no such geographical or departmental separation exists, or could exist, in the case at bar. In First National Bank of Ipswich v. Peabody, Gunner, Hill, Inc., the law firm in question consisted of 30 attorneys. Although that firm was described as “small” by the court, a 30-mem-ber law firm is far different from the office of a solo practitioner.[2] In addition, the tainted attorney was listed as “of counsel” to the firm. He was found by the court to be similar to an independent contractor. He paid rent for the office space which he shared with the law firm, but did not generally work for any clients of the law firm or review firm files. In addition, he did not share in the revenues or profits from the law firm’s clients. In the instant case, Rich is an associate of Oliveira and presumably does work for Oliveira’s clients. It seems apparent to me that the amount of remuneration which she receives for her services is dependent, at least in part, upon the revenues or profits which Oliveira earns from his clients. In addition, as an associate, Rich would clearly have access to information pertaining to Oliveira’s clients. Thus, in no way could she be considered tantamount to an independent contractor. I do not believe that either of the two cases cited by the defendants support the notion that a Chinese wall could truly be effective in a “one-person shop” such as was maintained by Oliveira before he hired Rich. In fact, none of the cases brought to my attention by either side stand for the proposition that a screening device such as a Chinese wall could ever be effective in the office of a single practitioner.
Once again, I wish to reiterate that I have nothing but the highest regard for the character, ethics and integrity of both Rich and Oliveira. There is no doubt in my mind that, if I issued an order along the lines of the one suggested by counsel for the defendants, they would make a Herculean effort to comply with it. However, it is not only my views, but also the views of the plaintiffs and the public, which are important for purposes of the competing policy interests sought to be served by the law, which seeks both to preserve client confidences and to permit individuals to obtain counsel of their choice. In this age of rampant cynicism, members of the public simply may not believe that two lawyers working closely together in a small law firm would not disclose confidential information to each other. See Commonwealth v. Lugo, 23 Mass.App.Ct., 494, 502 (1987) (dealing with the question of whether the name of a confidential informant should be given to defense counsel). I believe that if the plaintiffs should ultimately lose these pending law suits, they would go to their graves believing that they had been “done in” by their former attorney. I also believe that the plaintiffs’ concern is genuine and understandable, and that these motions have not been brought as a litigation tactic or as harassment. See Nelson v. Green Builders, Inc., supra at 1451. Under this particular set of circumstances, I conclude that disqualification of Oliveira is necessaiy to prevent the appearance of professional impropriety (see Cannon 9 of the Cannons of Ethics).
ORDER
For the foregoing reasons, it is the ORDER of this court that the motions of the plaintiffs in the above entitled actions to disqualify Ronald E. Oliveira, Esq. be, and the same hereby are, ALLOWED.

 I was advised during oral argument that Oliveira has been retained by an insurance company to represent the interests of two of the defendants, and by the defendant Robert M. Quinn, D.P.M. personally in the third case.

 In Berkshire County, a 30-member law firm would be the largest firm in the county.