Graham, J.
*326 INTRODUCTION
The plaintiffs brought this action against the defendants alleging fraud, negligence, and violations of G.L.c. 231, §85J and G.L.c. 93A, §§2, 9, and 11 stemming from the purchase of certain investment coins. The plaintiffs seek compensatory damages in the amount of $323,205, plus attorneys fees and costs. This matter is now before the court on plaintiffs’ motion to disqualify Mirick, O’Connell, DeMallie & Lougee (“Mirick, O’Connell”) as defendants’ counsel after an attorney working for the plaintiffs’ law firm on this particular case became an associate in Mirick, O’Connell’s litigation department. For the following reasons, the plaintiffs’ motion to disqualify is ALLOWED.
FACTS
After reviewing the court documents and affidavits submitted by the parties, the following facts can be found:
David T. Bunker, Esq., from the law firm Gould & Ettenberg, P.C., filed suit on behalf of the plaintiffs in Marlborough District Court (DocketNo. 9121-CV-313) on May 9, 1991. On June 24, 1991, the suit was removed to Middlesex Superior Court (Docket No. 92-0867) and John O. Mirick, Esq., of the law firm Mirick, O’Connell, answered the complaint for the defendants.
In May 1995, Gould & Ettenberg, P.C., hired attorney Richard N. Bradley. Attorney Bradley worked under Attorney Bunker as lead counsel on the instant case for approximately four to six months. One invoice shows that between May 15, 1995, and July 26, 1995, Attorney Bradley worked on the case sixteen separate days, billing a total of 16.56 total hours. Attorney Bradley performed work including, but not limited to, reviewing the file, having numerous conferences with Attorney Bunker and William S. Rogers, Jr., Esq. (who was then representing the defendants on behalf of Mirick, O’Connell), preparing deposition outlines for the defendant, Edward C. Lee, and having conferences with the plaintiff, David J. Adams.
In late August or early September 1995, Attorney Bradley responded to an ad in Massachusetts Lawyers Weekly that indicated Mirick, O’Connell was seeking a litigation associate. Attorney Bradley interviewed at Mirick, O’Connell in September and October 1995, including interviewing with Attorney Rogers. At that interview, Attorney Rogers declared that there was an ethical responsibility to refrain from discussing the instant case and the interview proceeded. Later in October 1995, Attorney Bradley was offered, and accepted, an associate’s position with Mirick, O’Connell. Attorney Bradley started working at Mirick, O’Connell in November 1995.[3]
On November 29, 1995, Attorney Bunker sent a letter to Attorney Rogers requesting that Mirick, O’Connell voluntarily disqualify itself and withdraw from the case. Attorney Rogers responded by way of letter dated December 15, 1995, stating that the firm would not disqualify itself, but that the firm had erected a “Chinese Wall” to ensure that Attorney Bradley not participate in any way on the instant case and, further, that Attorney Bradley swore not to have any involvement with said case. The plaintiffs, still uncomfortable, filed the current motion to disqualify Mirick, O’Connell.
DISCUSSION
“(D]isqualification, as a prophylactic device for protecting the attorney-client relationship, is a drastic measure which courts should hesitate to impose except when absolutely necessary. A disqualification of counsel, while protecting the attorney-client relationship also serves to destroy a relationship by depriving a party of representation of their own choosing.” Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 721 (7th Cir. 1982).
In the case at bar, plaintiffs argue that Mirick, O’Connell should be disqualified given the requirements of the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, as codified in Supreme Judicial Court Rule 3:07. In particular, the plaintiffs assert that a conflict of interest is present and rely upon Canon 9, which provides, “A Lawyer Should Avoid Even the Appearance of Impropriety,” as grounds for disqualifying Mirick, O’Connell.
The Supreme Judicial Court has not yet determined whether to adopt the “substantial relationship” test in analyzing claims of successive representation, nor is it necessary to do so in this case.[4] Bays v. Theran, 418 Mass. 685, 691 (1994); Wellman v. Willis, 400 Mass. 494, 498 (1987). “Courts have interpreted [the above] Canon[] to prohibit a lawyer from undertaking a representation adverse to a former client on subject matter related to the business with the former client, although there is no Disciplinary Rule explicitly prohibiting such subsequent representation.” NFC, Inc. v. General Nutrition, Inc., 562 F.Supp. 332, 333 (D. Mass. 1983).
As Mirick, O’Connell asserts that the defendants have a competing right to counsel of their choice, this court is faced with “reconciling the right of a person to counsel of his choice on the one hand, and the obligation of ‘maintaining the highest standards of professional conduct and the scrupulous administration of justice,’ on the other.” Mailer v. Mailer, 390 Mass. 371, 373 (1983); Deloury v. Deloury, 22 Mass.App.Ct. 611, 612-13 (1986). “(T]he right of a litigant to counsel of his choosing [, however,] is not absolute and cannot always predominate.” Mailer v. Mailer, supra at 373, citing McCourt Co., Inc. v. FPC Properties, Inc., 386 Mass. 145, 151 (1982). Additionally, in civil matters, as opposed to criminal matters, there is not the same rigorous sixth amendment protection to the choice of counsel. Keylik v. Goldstein, 724 F.2d 844, 848 (1st Cir. 1984). In the civil realm, this court is inclined to *327 “lean toward the protection of [confidential] communication[s], unless,' of course, the [client] voluntarily waives it.” Id. at 850.
The present case is in fact civil and there has been no consent to the representation by the former client, i.e., the plaintiffs. Attorney Bradley stated he “was assigned responsibility to assist David T. Bunker as counsel for the plaintiffs in this case.” Attorney Bradley worked on the case for approximately four to six months and had direct contact with the plaintiff, David G. Adams. There is no question that Attorney Bradley was privy to confidential information and that an attorney/client relationship existed between the plaintiffs and himself. Without relying on the presumptions of the “substantial relationship” test, it is clear that Attorney Bradley should not be allowed to represent the defendants in this case, and no one contends to the contrary. See T. C. Theater Corp. v. Warner Bros. Pictures, 113 F.Supp. 265, 269 (S.D.N.Y. 1953] (stating “[n]o client should ever be concerned with the possible use against him in future litigation of what he may have revealed to his attorney”). Far less clear, however, is the necessity of disqualifying Mirick, O’Connell.[5]
Mirick, O’Connell argues that there has been no “successive representation” in this case as Attorney Bradley has not had, and will not have, any connection to this case. Additionally, Mirick, O’Connell argues that less drastic alternatives can be implemented, and have already been undertaken, such as erecting a “Chinese Wall” and submitting corresponding affidavits, to ensure Attorney Bradley has no contact with this particular case. Mirick, O’Connell urges this court to be guided by the reasoning in NFC, Inc. v. General Nutrition, Inc., supra at 334, which states, “adverse representation by the same lawyer or firm is clear. More troublesome, however, is the overall fairness of imposing such an absolute standard when, as here, more complex factors are involved, such as vicarious disqualification, multiple law firm offices, long standing lawyer-client relationships, and lateral transfers of attorneys” (emphasis in original). While the arguments set forth by Mirick, O’Connell are compelling, this court concludes that the high ethical standards of professional responsibility, which require the avoidance of the appearance of impropriety, outweigh the countervailing interests.
Attorney Bradley is currently one of 7 associates in Mirick, O’Connell’s litigation department, along with 9 partners. Attorney Rogers, also a member of the litigation department, is the primary attorney for the defendants and interviewed Attorney Bradley for his current position. Attorney Bradley works out of the same office location as Attorney Rogers. Cf. NFC Inc. v. General Nutrition, Inc., supra at 334 (noting one factor for allowing firm to continue its representation is new attorney worked in Detroit office, while case was handled out of Pittsburgh office). Due to Attorney Bradley’s direct familiarity with the present case, coupled with the fact that discovery has yet to be completed, this court finds the continued representation of defendants by Mirick, O’Connell would create the appearance of impropriety. See Bays v. Theran, supra at 693 (agreeing that facts “would create an appearance of impropriety and would serve to undermine the public’s confidence in the integrity of the legal profession’’); Deloury v. Deloury, supra at 615 (stating public perception of attorney loyalties are one consideration). “There should be, of course, no hesitation to disqualify a lawyer or law firm when such a step is necessary to meet the standards and purposes embodied in the [Canons of Ethics and Disciplinary Rules Regulating the Practice of Law].” NFC, Inc. v. General Nutrition, Inc., supra at 334. Furthermore, the plaintiffs immediately perceived a potential problem and notified the defendants; there was no delay in notification, and no suggestion that there was a hidden motivation of stalling the litigation or taking an unfair advantage. See Bays v. Theran, supra at 693 (opining motion for disqualification not “advanced as a harassment or dilatory tactic”); Masiello v. Perini Corp., 394 Mass. 842, 850 (1985) (noting factor may be timing of motion).
It is true that Mirick, O’Connell has been representing the defendants since June 1991, and that Attorney Bradley’s employment only started in November 1995, but that fact is not determinative and is outweighed by the above considerations. In addition, the plaintiff is obviously concerned about the efficacy of a Chinese wall in the instant case, given the small size of the litigation department. After analyzing the numerous factors involved, this court concludes that Mirick, O’Connell must be disqualified due to Attorney Bradley’s intimate knowledge of the case.
ORDER
Based upon the foregoing, it is hereby ORDERED that the plaintiffs’ Motion to Disqualify Mirick, O’Connell, DeMallie & Lougee as Counsel for the Defendants is ALLOWED.

Mirick, O’Connell has approximately 44 total attorneys, with 16 working in the litigation department. The litigation department is comprised of 9 partners and 7 associates.

The “substantial relationship” test provides that “the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent.” T. C. Theater Corp. v. Warner Bros. Pictures, 113 F.Supp. 265, 268 (S.D.N.Y. 1953).

Disciplinary Rule 5-105(D) provides that “[i]f a lawyer is required to decline employment or to withdraw from any employment under a Disciplinary Rule, no partner or associ- *328 ale or any other lawyer affiliated with him or his firm may accept or continue such employment.” Disciplinary Rule 5- 105(D), however, is not dispositive “because no Disciplinary Rule explicitly prohibits subsequent representations of the kind at issue in this case.” NFC, Inc. v. General Nutrition, Inc., supra at 334 n.2. “It is up to the court to decide whether vicarious disqualification is necessary in a given instance.” Id.