## Ries v. MTD Products, Inc.

*Eric P. Reif*, for plaintiffs.
*John W. Jordan, IV*, for defendant.

WETTICK, *J.*, June 25, 1980—This is a personal injury action arising out of a bicycle accident. Plaintiffs purchased the bicycle that is the subject of this litigation on May 8, 1976 and the accident occurred on May 28, 1976. Defendants include MTD Products, Inc. (MTD) which manufactured the bicycle. Plaintiffs aver that the accident was caused by the negligence of MTD in designing a bicycle with inadequate safety features, in failing to test properly the component parts of the bicycle, in failing to provide proper instructions for the assembly of the bicycle and in failing to inform purchasers of the procedures for maintaining, repairing and adjusting the bicycle. In addition plaintiffs aver that MTD is strictly liable under section 402A of the Restatement, 2d, Torts for designing and manufacturing a bicycle with inherent defects.

Plaintiffs are presently represented in this action by Eric P. Reif, a partner in the Pittsburgh Office of Reed, Smith, Shaw and McClay (Reed, Smith). MTD has filed a petition to disqualify Eric Reif and Reed, Smith from representing plaintiffs in this action on the grounds that Reed, Smith previously represented MTD in matters involving the safety of its bicycles. This petition is the subject of this opinion and order of court.

Since 1973, Attorney Mac S. Dunaway has represented MTD in matters involving the Consumer Products Safety Act. From 1973 to 1976 Mr. Dunaway was a partner in the law firm of Gall, Lane & Powell. On March 1, 1976, this law firm merged with Reed, Smith and Mr. Dunaway joined Reed, Smith as a partner in its Washington, D.C. office. On June 1, 1977, Mr. Dunaway left Reed, Smith,

taking the MTD account with him. Reed, Smith has performed no services for MTD following Mr. Dunaway's departure. Only one other lawyer with Reed, Smith (Bernard J. Casey) provided legal services to MTD. Mr. Casey was associated with Gall, Lane & Powell prior to the merger and joined Reed, Smith as part of the merger agreement on March 1, 1976. He remains with Reed, Smith and is presently a partner in its Washington, D.C. office. According to his affidavit, he assisted Mr. Dunaway in representing MTD in matters arising under the Consumer Products Safety Act but to the best of his recollection, any bicycle inquiries which he handled did not involve the alleged defects that are the subject of this litigation. Furthermore, he states that no attorney in Reed, Smith's Pittsburgh office ever had knowledge of any confidential information concerning MTD.

Reed, Smith represented MTD only in matters involving the Consumer Products Safety Act. This act imposes on all manufacturers of consumer products the obligation to notify the Consumer Products Safety Commission if they discover that a product which they make contains a defect that may create a potential risk of injury to the public. As counsel for MTD, Mr. Dunaway (and Mr. Casey on limited occasions) reviewed all complaints which MTD received dealing with the construction, manufacture and assembly of its bicycles to determine if any complaints involved a potential defect that should be reported. In representing MTD, counsel had access to all of MTD's records concerning bicycles with the exception of financial data.

While MTD may have furnished confidential information to attorneys with Reed, Smith, plaintiff's counsel through affidavit has assured this court

that none of this information will be used against MTD. In this affidavit Eric Reif avers that the complaint in this action is based on an expert report prepared by a consulting firm for an attorney who previously represented plaintiffs; that he had no knowledge of his firm's representation of MTD until the matter was brought to his attention by an attorney for MTD after the complaint in this action was filed; that he has no knowledge of any information that MTD furnished Reed, Smith in connection with its representation of MTD; and that no use has been or will be made of any information which MTD furnished to Reed, Smith as part of the attorney-client relationship.

In evaluating the merits of MTD's petition to disqualify counsel, we look to the Code of Professional Responsibility which has the force of statutory rules of conduct for attorneys: Slater v. Rimar, Inc., 462 Pa. 138, 338 A. 2d 584 (1975); Com. v. Eastern Dawn Mobile Home Park, Inc., 486 Pa. 326, 405 A. 2d 1232 (1979). The relevant provisions are canon 4 of the code which requires a lawyer to preserve the confidences and secrets of a client and canon 9 which requires a lawyer to avoid even the appearance of professional impropriety. If Reed, Smith's representation of plaintiffs in this action violates either canon, the appropriate relief is the granting of MTD's motion to disqualify: Slater v. Rimar, Inc., supra. Furthermore, a court may disqualify an attorney for failing to avoid the appearance of impropriety even if there is no finding that the attorney has acted improperly: American Dredging Co. v. City of Philadelphia, 480 Pa. 177, 389 A. 2d 568 (1978).

In considering a motion to disqualify because an attorney represents a party in a matter in which an

adverse party is that attorney's former client, the critical issue is whether the subject matter of the two representations are substantially related. Since the present action arises out of an accident occurring in and involving a bicycle purchased in the same year in which Reed, Smith represented MTD in matters involving the safety of its bicycles, the subject matter of the two representations is identical. Where the subject matter of the two representations is identical, disqualification is automatic; there is no need for the former client to establish that improper use may be made of any confidential information in order to disqualify his or her former counsel. This is so because where the two actions involve similar subject matter, there is a reasonable likelihood that through the former representation counsel may have obtained confidential information relevant to the subsequent representation. "The rationale underlying Canon 4 is the principle that a client should be encouraged to reveal to his attorney all possibly pertinent information. . . . A client should not fear that confidences conveyed to his attorney in one action will return to haunt him in a later one." Richardson v. Hamilton International Corp., 469 F. 2d 1382, 1384 (3d Cir. 1972). Thus, to preserve the public confidence in the legal profession and to encourage disclosure of all pertinent information, attorneys are automatically barred from representing a party against a former client in a matter closely related to the matter for which the former client obtained representation.

This was the standard adopted in State of Arkansas v. Dean Foods Products Company, Inc., 605 F. 2d 380, 383 (8th Cir. 1979):

"The rule was well described in T.C. Theatre Corp. v. Warner Bros. Pictures, Inc., 113 F. Supp. 265, 268-69 (S.D. N.Y. 1953): '[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action [where] the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.'"

Also, see Schloetter v. Railoc of Indiana, Inc., 546 F. 2d 706, 712 (7th Cir. 1976), where the court said:

"Moreover, we think the district court's strict enforcement of Canon 9 was particularly appropriate in a case such as this where the subject matters involved in the former and present representations are so closely related. The validity and scope of the very patent Mr. Jeffrey, while a Donnelly partner, helped to procure is at issue in the pending infringement action. In these circumstances, all doubt should be resolved in favor of disqualification in order to 'prevent any possibility, however slight, that confidential information acquired from . . . [Schloetter] during a previous relationship may . . . be used to . . . [Schloetter's] disadvantage' in this case. Emle Industries, Inc. v. Patentex, Inc., 478 F. 2d 562, 571 (2d Cir. 1973)."

This case law and its underlying rationale would clearly disqualify attorneys Dunaway and Casey from representing plaintiffs in this proceeding against MTD. Reed, Smith contends, however, that this disqualification should not automatically extend to other attorneys in its law firm working in a different office who have absolutely no knowledge of the law firm's representation of MTD, particularly since the attorney who was primarily responsible for representing MTD is no longer with Reed, Smith.[1] There is support for Reed, Smith's position. See, generally, Comment, The Chinese Wall Defense to Law-Firm Disqualification, supra.

In Novo Terapeutisk Laboratorium v. Baxter Travenol Laboratories, Inc., 607 F. 2d 186 (7th Cir. 1979), plaintiff was represented by a law firm that formerly represented defendant and defendant was represented by a former partner of this law firm who took defendant as a client when he left the law firm. The only work which the former law firm performed for defendant that related to the existing litigation was done by the attorney now representing defendant. The controlling issue in this case was whether the presumption that the former counsel had shared confidential information with his associates at his former law firm was rebuttable or irrebuttable. A majority of the court held that the presumption need only be rebuttable because the former counsel was in a position to know exactly what confidences he may have shared with others

---

1. The fact that MTD was represented by Reed, Smith's Washington, D.C. office while plaintiff is represented by its Pittsburgh office is no basis for denying MTD's motion to disqualify. See Westinghouse Electric Corp. v. Kerr-McGee Corp., 580 F. 2d 1311 (7th Cir. 1978); Comment, The Chinese Wall Defense to Law-Firm Disqualification, 128 U. of Pa. Law Rev. 677, fn. 8 (1980).

in his firm and consequently denied defendant's motion to disqualify because of the absence of any evidence rebutting the affidavits of all of the present members of plaintiff's firm averring that they received no confidential information from defendant's counsel. The dissenting opinion however, concluded that the erection of an irrebuttable presumption was required to maintain the vitality of canons 4 and 9.

In Gas-A-Tron of Arizona v. Union Oil Company of California, 534 F. 2d 1322 (9th cir. 1976), plaintiffs were represented by a law firm which had hired an attorney who had been an associate in a law firm that had represented the defendants and whose files contained confidential material related to the pending litigation. However, because this attorney had not reviewed these files of his former law firm or obtained any confidential information about these defendants, the court ruled that plaintiffs' law firm was not disqualified by virtue of this attorney's previous association with a law firm which had represented defendants. Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., 518 F. 2d 751 (2d Cir. 1975), involved a similar fact situation and the court reached the same result.

Each of these cases can be distinguished. In the first case the party seeking the disqualification was represented in the immediate action by the only attorney who had previously represented this party in a related matter on behalf of the defendant's law firm, while in the present action one attorney who represented MTD on behalf of Reed, Smith continues to practice with Reed, Smith in its Washington, D.C. office. In the other cases the disqualification motion was directed against a law firm that had never represented the moving party because a member of the firm with no confidential

knowledge of the moving party's affairs had previously been an associate with a law firm that had represented the moving party; thus, these motions involve different policy issues. See Schloetter v. Railoc of Indiana, supra, at 712. However, these cases do show that in considering a motion to disqualify based on canons 4 and 9, certain courts are prepared in some situations to sift the facts rather than to presume conclusively that every lawyer in a law firm that had represented a client in a related matter gained knowledge of the confidential information that the client furnished any member of the law firm.

Other courts have construed canons 4 and 9 in a more expansive manner. In State of Arkansas v. Dean Foods Products Company, supra, the court on the defendants' motion disqualified an assistant attorney general for the state and his staff from representing the state in the present action because this assistant attorney general had previously been associated with a law firm that had represented the defendants in a related matter. Although the state offered to prove that its assistant attorney general had no knowledge of any confidential information, the court, disagreeing with the Silver Chrysler Plymouth, Inc. v. Chrysler Motors Company decision, supra, held, that the presumption of shared confidences was irrebuttable and that disqualification was therefore automatic.

"Canon 4, admonishing the lawyer to preserve the confidences and secrets of his clients, is inextricably wedded to Canon 9. Although the Silver Chrysler rule may satisfy the cold letter of Canon 4 in a particular case, its universal application could violate the spirit of Canon 9. . . . Clients who retain, are billed by, and pay a law firm, can reasonably

expect, and often their problems require, that confidences disclosed to one lawyer in the firm will be shared with others in the firm. . . . If the reputation and status of the legal profession, and more importantly the freedom and opportunity of the public to obtain adequate legal counseling, are to be preserved, a client must have every reason to expect that disclosures to 'his' law firm will not be used against him by any member or associate lawyer in that firm.

"It is precisely to protect that 'expectation' of safety in disclosure that Canon 9's concern for the appearance of impropriety must be merged with Canon 4's injunction against disclosure of a client's secrets. As recognized in Fred Weber, Inc., 566 F. 2d at 609, considerations of actual impropriety are irrelevant to the applications of Canon 9. . . . The public cannot be expected to know of Griffin's actual knowledge. It deals in images and appearances. Though a lawyer cannot be expected to be 'Holier than the Pope,' his conduct must be such as to breed at least the confidence normally reposed in the parish priest." at pp. 385-386.

Schloetter v. Railoc of Indiana, supra, considered a motion to disqualify where defendant's law firm through an attorney apparently no longer with the firm had represented the plaintiff in a substantially related matter. The court held, at p. 711, that the decision of the district court to disqualify could be supported because of the appearance of impropriety:

"As noted above, when Mr. Jeffery was a member of the Donnelly firm, the confidential information he was deemed to possess was imputed to the other members of his firm. Where, as here, the continuity

of the firm held to possess the collective knowledge of its clients' confidences has been maintained throughout the relevant period, there remains, despite Mr. Jeffery's departure, a 'danger . . . that . . . [confidential] information is available for expo-·sure to the attorneys in the existing Donnelly firm who now seek to represent defendant in this action.' Mem. Op., Mar. 29, 1976, at 5.

"And, perhaps more important from the perspective of preserving public confidence in the legal profession, it would be unreasonable to expect the public or clients like Schloetter, who have reposed confidences in a member of a law firm, to accept the proposition that the danger of those confidences being used against the client in a closely related matter has entirely dissipated upon the departure of the individual member from the firm."

Because the two representations in the present case involve similar issues and because one attorney who represented MTD in a limited number of matters involving bicycle safety continues to be a member of Reed, Smith, this court will grant MTD's motion to disqualify for the reasons given in State of Arkansas v. Dean Foods Products Company, supra, and Schloetter v. Railoc of Indiana, supra.[2] This court did not arrive at this decision without considerable difficulty. A successful disqualification motion separates a party from the attorney of his or her choice and such motions are often interposed for tactical reasons. Furthermore, this court believes without reservation that Eric Reif and any other members of his law firm who may be involved in this litigation have not and will not in the future

2. Also see Fund of Funds, Ltd. v. Arthur Andersen & Co., 567 F. 2d 225 (2d Cir. 1977); Fred Weber, Inc. v. Shell Oil Co., 566 F. 2d 602 (8th Cir. 1977).

gain knowledge of or in any way utilize any information which MTD furnished Reed, Smith as a client. However, where the issues involved in the prior representation and the pending litigation against a former client are similar, automatic disqualification is essential to preserve the public's confidence in the legal profession and to encourage clients to confide fully in their counsel. Any narrower construction of canons 4 and 9 adopted to achieve justice in the individual case will not be understood by the public and may weaken or destroy the attorney-client relationship that these canons are designed to foster.

## ORDER

And now, June 25, 1980, upon consideration of the petition to disqualify counsel of MTD Products, Inc., it is hereby ordered that the law firm of Reed, Smith, Shaw and McClay is disqualified from representing plaintiffs in this action.